IN THE

# HIGH COURT OF ERRORS AND APPEALS

FOR THE

# STATE OF MISSISSIPPI.

NOVEMBER TERM, 1851.

THE BANK OF ENGLAND *vs.* LEO TARLETON et al.

It is settled that all debts secured by a mortgage, and due at the date of the decree of foreclosure, should be paid *pro ratâ*, in case of the insufficiency of the mortgage fund to pay the whole of them, unless a preference be given to some of them by the terms of the mortgage deed, or unless the mortgagee, in assigning any of them, designed to impart a right of prior satisfaction to his assignee; whether the controversy be between the surety of the mortgagor and the mortgagee, or between the different assignees of the latter.

Where the payment of several notes is secured by a mortgage, and the mortgagee assigns some of them, he may agree that the notes thus assigned shall be first satisfied out of the mortgage fund; and a subsequent assignee of the other notes will be bound by such agreement, to the same extent that his assignor would have been bound by it; and such agreement need not be express, but may be inferred from circumstances, showing what was the intention of the parties.

W. owed the Bank of England about $40,000, evidenced by his notes, indorsed by B., W. & Co., and secured by a mortgage upon land and slaves. Having paid a portion of the debt, W. sold the land and slaves to G. W. T., who executed several notes for the purchase-money, with a mortgage upon the land and slaves, to secure the payment thereof. A portion of those notes were assigned to the bank, which thereupon entered satisfaction upon the record of its mortgage. Others of the notes of G. W. T. were subsequently assigned to L. T., who filed his bill for a foreclosure of the mortgage. *Held*, that, under these circumstances, it was clearly the intention of

15*

the assignor of the bank, to give it a right of prior satisfaction by the assignment, and that this right could not be questioned by L. T., the subsequent assignee.

Where a creditor has a prior and exclusive mortgage upon property, and consents to an arrangement, by which the mortgagor is permitted to sell the mortgaged property to a third person, who executes several notes, secured by a mortgage for the purchase-money, the creditor receiving an assignment of a part of the notes of the second mortgage, in payment of his claim ; the rights of the creditor are not merely those of an assignee of the notes of the second mortgagor, nor does his equity originate in the assignment ; but it will be *held*, that he did not intend to relinquish his right to prior satisfaction, out of the property conveyed to him in the first mortgage, and embraced in the second.

As a general principle, the rights of parties, growing out of the assignment of debts secured by mortgage, will be governed by the law of the place where the assignment is made.

An assignee of a mortgage debt, takes only an equitable interest, subject to all the equities existing against the mortgagee, in favor of prior assignees. He can stand in no better equity than his assignor could do. The sole exception to this principle is in the case of a subsequent incumbrancer, who has got in the legal estate ; of the benefit of this chancery will not deprive him ; for, there being equity against equity, the party having the legal title will prevail.

Where a mortgagee transfers some of several mortgage notes, in payment of his own pre-existing debt, giving to his assignee a right of prior satisfaction, and afterwards assigns the residue of the mortgage debt to a third person, and subsequently pays, as indorser, one of the notes first assigned by him, he cannot, in a contest with the first assignee, claim a *pro ratâ* distribution of the avails of the mortgage ; for, as to that assignee, he does not stand in the character of a surety ; the debt is his own, and the payment of the note is in fulfilment of his contract, as principal debtor. The doctrine of substitution cannot apply in such a case, and the privilege exists only in cases where a surety has paid the debt of his principal, or secured its payment.

THE facts of the case, as shown by the record, are, that the Bank of England held a mortgage on the Alloway plantation and negroes, in Adams county, Miss., to secure certain notes of John Watt, indorsed by Burke, Watt & Co., given in settlement of a debt of Watt, Burke & Co., on which the balance due on the 8th of November, 1843, was, as appears from an account stated between them, about $40,211.67. After consultation with the agent of the Bank of England in New Orleans, and arranging the amount to be paid in cash,

and the particulars of the instalments to be postponed, John Watt, sold the mortgaged property to Geo. W. Tarleton, for about $44,000 ; $6000 were paid in cash, by Tarleton to the agent of the Bank of England, and the remainder of the purchase-money was to be paid in seven instalments. The first to become due on the 1st of January, 1844, and notes were executed by Geo. W. Tarleton for the respective instalments, who also executed a mortgage on the plantation and forty slaves and other property, to secure the payment of the purchase-money. The five notes first falling due were delivered to the agent of the Bank of England, in full satisfaction of the demand of his principal, and satisfaction was entered on the mortgage executed by John Watt. The first note falling due for *$6000,* indorsed by Burke, Watt & Co., was paid by the mortgagor ; the second, for $8000, was likewise indorsed by said firm, and taken up by them upon the failure of the mortgagor to pay it at maturity. The note of $8000, which was protested for non-payment, and taken up by Burke, Watt & Co., and the two last notes executed by Geo. W. Tarleton, were afterwards transferred to Leo Tarleton. The other three notes unpaid, are still the property of the Bank of England. ·

In April, 1847, Leo Tarleton, the complainant, exhibited his bill in the vice-chancery court, at Natchez, to foreclose the mortgage on said plantation, &c. The · Bank of England made her answer a cross-bill, and claimed priority of satisfaction out of the mortgaged fund. There was a fund of $22,573.50, proceeds of the mortgage in the hands of the receiver, subject to appropriation towards the payment of the notes secured by the mortgage. The fund being inadequate to satisfy all the notes, the question arises as to the appropriation of the money. The vice-chancellor decreed a distribution of the fund to all the notes *pro ratâ,* from which decision the bank appealed to this court.

*Eustis,* for appellant,

Contended the decision of the court below was erroneous, and to sustain his position, cited *Maxwell* v. *Jameson,* 2 B. &

Ald. 51; *Moody* v. *Sitton*, 2 Ired. Ch. R. 382; *Kerr* v. *Cowen*, 2 Dev. Eq. 356; *Langdon* v. *Keith*, 9 Verm. R. 300; *Mechanics Bank* v. *Bank of Niagara*, 9 Wend. 410; *Terry* v. *Woods*, 6 S. & M. 150; *Parker* v. *Mercer*, 6 How. 320; *Cage* v. *Iler*, 5 S. & M. 410; *Henderson* v. *Herrod*, 10 Ib. 633; *Bank of U. S.* v. *Singer*, 13 Ohio, 240; *Stamford Bank* v. *Benedict*, 15 Conn. 438; *Cullum* v. *Erwin*, 4 Ala. 452; 9 Porter, 547; *Union Bank of Md.* v. *Edwards*, 1 Gill & John. 346; 2 Robinson, 243; 1 Rand. 466; *Wade* v. *Coope*, 2 Sim. 155; 17 Ves. 514; 2 Dev. Eq. 136.

*Montgomery & Boyd*, for appellee,

Cited, in reply, *Parker* v. *Mercer*, 6 How. 320; *Cage* v. *Iler*, 5 S. & M. 410; *Henderson* v. *Herrod*, 10 Ib. 631; *Turner* v. *Brown*, 3 Ib. 425; *Terry* v. *Woods*, 6 Ib. 139.

Mr. Justice SMITH delivered the opinion of the court.

This was a bill filed in the vice-chancery court for the southern district, to foreclose a mortgage executed by George W. Tarleton.

The history of the transaction is as follows. John Watt, to secure the payment of a debt due to the Bank of England, by the firm of Watt, Burke & Co., of which firm he was a member, executed a mortgage on the Alloway plantation and negroes, of which he was then owner. The debt due to the Bank of England was evidenced by notes made by Watt, and indorsed by the firm of Watt, Burke & Co. The amount due to the bank exceeded the sum of $40,000.

After consultation with the agent of the Bank of England in New Orleans, and an arrangement with him as to the mode in which the notes held by his principal would be paid off or taken up, Watt sold the said plantation and slaves to George W. Tarleton. Six thousand dollars were paid in cash, and the remainder of the purchase price was to be paid in seven instalments; the first to become due on the 1st of January, 1844. Notes were executed for the respective instalments by Tarleton, who also executed a mortgage on the said plantation; forty slaves and other property to secure the payment of the

same. The $6000 were paid to the agent of the Bank of England, and the five notes first falling due were delivered to him in full satisfaction of the demand of his principal. Satisfaction was entered on the mortgage executed by John Watt. The first note for $6000, indorsed by Burke, Watt & Co., was paid by the mortgagor; the second, for $8000, due 1st of January, 1845, was likewise indorsed by said firm, and taken up by them upon the failure of the mortgagor to pay it at maturity. The remaining three notes were made payable to his own order by the mortgagor, and transferred to the agent without the indorsement of Burke, Watt & Co. These notes are still the property of the Bank of England.

The note for $8000, which, upon protest for non-payment, was taken up by Burke, Watt & Co., and the two last of the series executed by George W. Tarleton, were afterwards transferred to the appellee, Leo Tarleton, who, in April, 1847, as the owner of these notes, filed his bill to foreclose. The Bank of England made her answer a cross-bill, and claimed priority of satisfaction out of the mortgage fund. The vice-chancellor decreed a distribution of the fund to all of the notes *pro ratâ*, the fund being insufficient to discharge the whole of them.

Whether the fund should be applied first to the payment of the notes held by the Bank of England, or in the mode directed by the vice-chancellor, is the only question in the case.

In *Parker* v. *Mercer*, 6 How. 320, where a mortgage was executed to secure the payment of several notes falling due at different times, after all of them had become due a bill was filed to foreclose; it was holden by this court that the proceeds of the mortgaged property should be applied to all of the notes *pro ratâ*, and refused to direct application in full payment of the first note, although it was secured by an indorser. The complainant was the original creditor, and the holder of all of the notes. The indorser was an accommodation indorser without consideration. That fact seems to have influenced the decision of the court.

In *Cage* v. *Iler*, 5 S. & M. 410, a trust deed had been executed to secure the payment of three promissory notes falling

due at different dates.  Upon the non-payment of the second note, suit was brought upon it against the maker, who was also the grantor in the trust deed.  Judgment was obtained, and the execution was enjoined by bill in chancery.  Subsequently the judgment creditor brought suit on the injunction bond against Cage, the administrator of one of the sureties on the bond.  Before however the suit was brought, the property conveyed in trust had been sold, and the proceeds applied exclusively in satisfaction of the third note, which had then fallen due.  Upon a plea of payment, this court held, that the proceeds of the trust sale should be applied to all of the notes remaining unpaid.

In *Terry* v. *Woods*, 6 S. & M. 150, these cases are referred to, and the court say, " It has been decided that all debts secured by mortgage or deed of trust, due at the time the bill is filed to foreclose, or at the time of sale under the deed of trust, should be paid *pro ratâ* out of the estate, if insufficient to pay the whole."

And in *Henderson* v. *Herrod*, 10 S. & M. 633, which was a contest for the appropriation of a fund between different assignees of notes secured by the same mortgage, a similar rule was applied.

Hence it may be regarded as settled, that all debts secured by mortgage, and due at the date of the decree of foreclosure, unless a preference be given to some of them by the terms of the mortgage deed, or unless the original creditor, in assigning any of them, designed to impart a right of prior satisfaction to the assignee, should be paid *pro rata* in case of an insufficiency in the mortgage fund to pay the whole of them, whether the controversy be between the surety of the mortgagor and mortgagee, or between the different assignees of the latter.

It is true that, in the last case cited, a doubt is expressed as to the authority of the original holder of notes secured by mortgage, to assign any one of them so as to impart a preference to the assignee ; but, upon mature reflection, it will be seen that the right is indisputable.  The original holder of notes or bonds, secured by mortgage, is not only the exclusive owner of the debts but of the security, and may order the

mortgage to stand as a security, in the first place, for the sum
due, by any particular note or bond. 17 Ser. & R. 407 ; 9
Wend. R. 410 ; *Cullum* v. *Erwin*, 9 Ala. R. 458. No particu-
lar form of assignment is essential to impart a preference to an
assigned note. It is sufficient if it appear to be the clear and
certain intention of the parties to convey the right. The rule,
in *Langdon* v. *Keith*, 9 Verm. R. 300, is distinctly stated. The
court say, " That when part are assigned and part retained, it
is entirely a matter of contract between the mortgagee and
assignee, how far and for whose benefit the mortgage should
be holden. It is mere matter of intention and mutual under-
standing between the parties, which must be ascertained by
the courts, when applied to, like all other questions of contract,
understanding and intention from the declarations and acts of
the parties, and the facts developed by the testimony."

Assuming, that by the decisions of this court, Burke, Watt
& Co. were authorized to give a preference to the notes
assigned to the Bank of England, or in other words, that they
had a right to agree that the assigned notes should be first sat-
isfied out of the mortgage fund, in exclusion of those retained
by them in case it should prove insufficient to pay the whole
of them ; we will proceed to inquire whether such in fact was
the intention of the parties.

As before stated, prior to the execution of the mortgage by
George W. Tarleton, the debt due to the appellant, by Burke,
Watt & Co., amounting to upwards of $40,000, was secured
by the mortgage of John Watt on the same plantation, and
some twenty-eight of the same slaves embraced in the mort-
gage of the former. Hence the equitable right of satisfaction
out of the greater part of the property embraced in Tarleton's
mortgage, on the part of the bank, existed prior to and inde-
pendent of the latter mortgage. The sale of the Alloway
plantation and slaves was made by Watt, for the express pur-
pose of relieving the firm, of which he was a partner, from the
debt due to the bank. It was made after consultation with
her agent, and pursuant to an understanding as to the mode
in which the notes of Tarleton were to be executed, secured
and transferred for that purpose. The sale to Tarleton, and

the disposition of the proceeds of the sale, was in effect an appropriation, to a great extent, of the Alloway property to the bank in payment of their debt. There is not a single circumstance, neither act nor declaration of either party, which indicates the intention that the lien on the land and slaves, which the bank held without a competitor under the first mortgage, should not be continued under the second.

This case, in many of its features, is strikingly analogous to the case of *Stafford* v. *Van Rensselaer*, in 9 Cow. 317.

Van Deusen having purchased from the latter land for which he had not paid, sold part of the land to Wright, from whom he took two mortgages, of equal date, for parts of the consideration, intending that one of the mortgages should be assigned to Van Rensselaer, to secure the original consideration of the land, and that it should have priority. This was pursuant to an understanding between Van Rensselaer and his vendee. The mortgages were registered concurrently; but the one intended for Van Rensselaer was first assigned to him. The other was afterwards assigned to another person, in good faith, for full value. It was held, that the mortgage first assigned took precedence. The court, in delivering its opinion, say, Van Rensselaer " does not stand simply in the character of an assignee of the bond and mortgage. His equitable rights and interests did not originate in the assignment. They existed before, and the assignment was intended as a legal consummation of them." " It is evident," further say the court, " that it was not the intention of Van Rensselaer, by that arrangement, to relinquish his lien upon the land."

In the case at bar, the appellant does not stand simply in the attitude of an assignee of the notes secured by the second mortgage. Her equities did not originate in the assignment. She held a prior and exclusive lien upon the Alloway plantation and slaves, arising under the mortgage previously executed by Watt, and the substitution of Tarleton's mortgage and notes for those previously held by the bank, was made for the accommodation and benefit of Burke, Watt & Co. If, in the case of Stafford and Van Rensselaer, it was evident that the latter did not intend to relinquish his lien upon the land, in

this case, it would appear to be equally manifest, that the appellant did not design to relinquish, by this arrangement, her right to prior satisfaction, out of the property conveyed in the first mortgage and embraced in the second.

The contract of assignment was separate and distinct from that of the notes. The assignment was made in the state of Louisiana, where, likewise, the notes were payable. It is undoubtedly true, as a general principle, that the law of Louisiana would govern the rights of the parties arising under the assignment; but, without placing the question directly upon the effect of the law of the place where assignment was made, the provisions of that law are important, as indicating the intention of the parties.

By the law of Louisiana, the assignment by indorsement of notes, secured by mortgage, is in effect an assignment *pro tanto,* of the mortgage. Civil Code, p. 403, art. 26, § 15; *Auguste* v. *Renard,* 3 Rob. Rep. 389 ; 2 Ib.·304. And where the holder of claims secured by mortgage, assigns part of them, the assignor will not be permitted to come in competition with the assignee, if the pledge is insufficient to pay the whole. *Solzman* v. *His Creditors,* 2 Ib. 243.

Upon the whole view of the subject, we conclude that it was the evident intention of the parties, at the time of the transfer, that the appellant should take the notes, with a right of prior satisfaction. This intention and understanding must determine the question as between the assignors and the appellant.

For the present, we will leave out of view the second note, which, upon its dishonor, was paid and taken up by Burke, Watt & Co. The question then recurs, Can Leo Tarleton, the subsequent assignee of the two last notes, stand in a more favorable attitude than the original holders thereof?

The transfer of the notes to the appellant, carried with it an assignment of all the securities possessed by the holders and of all their remedies, which she could use as fully and beneficially as they could do. As we have seen by the terms of the assignment, the assignee became a preferred creditor. The right of priority thus existing between the appellant and Burke, Watt

& Co., must exist also as to the assignee of the two last notes. The holders of these notes could not transfer a greater right than they possessed. In *Clowes* v. *Dickinson*, 5 John. Ch. R. 235, the question of contribution, which was among purchasers of separate parts of an encumbered estate, was decided on the principle, that subsequent purchasers can stand in no better equity than he from whom they purchased. The case of *Agricultural Bank* v. *Pallen*, 8 S. & M. 357, was determined on the same principle. Leo Tarleton acquired at most but an equity, and admitting that he took the assignment without notice of the conditions of the previous transfer to the bank, he can stand in no better equity than the party from whom he purchased. The maxim, *Prior in tempore, potior in jure*, applies as well to equitable, as to legal interests; and to it there is but a single exception, which exists in the case of a subsequent incumbrancer, who has got in the legal estate, of the benefit of which chancery will not deprive him, unless he has had notice of the prior incumbrance. For, in such case, there being equity against equity, the party having the legal title will prevail.

If Burke, Watt & Co. had retained the second note which was taken up by them, they could not, in a contest with the appellant, claim a *pro ratâ* distribution of the avails of the mortgage. They had transferred this note in part payment of a pre-existing debt, due by themselves, and their indorsement was designed as a security, in addition to the mortgage. As to the bank, they did not stand in the character of a surety. The debt due was their own debt, and the payment of the said note was in fulfilment of their contract, as the principal debtor. Hence, they could not contest the right of the appellant to prior satisfaction, out of the avails of the mortgage, on the doctrine of substitution.

The privilege of substitution in behalf of a surety who has paid the debt of his principal, is of purely equitable origin, and is based exclusively on the principles of natural justice. It has been held uniformly, to exist only in cases where the surety has actually paid, or has secured the payment of, the debt due by his principal. *Cheeseborough* v. *Millard*, 1 John.

Ch. R. 412; *Union Bank of Maryland* v. *Edward*, 1 Gill & J. 363.

Such being the position of the original holders of this note, it is evident, that their assignee could not claim a participation in the mortgage fund. He was vested with all of their rights, and no more. If a surplus had remained after the satisfaction of the appellant's demand, he would have been entitled to it.

As we have said, the assignment was made in Louisiana, and the view we take of the subject seems to accord with the rule which would be applied under the law of that state. *Solzman* v. *His Creditors*, 2 Rob. Rep. 241.

We reverse the decree of the vice-chancellor, and direct that a decree shall be entered in this court, ordering the proceeds of the mortgage to be applied first to the payment of the demands of the appellant.

A petition for re-argument was filed by the counsel for the defendant in error, but the court refused to grant the prayer of the petitioner.