THE TRUSTEES OF JEFFERSON COLLEGE *vs.* S. S. PRENTISS et al.

G. sold to D. a tract of land, for which D. executed to him his two promissory notes, one for the sum of $4,964.80, payable on the 11th of August, 1839, and the other for $4,622.40, payable on the 11th of August, 1840, and to secure the payment thereof, D. executed a deed in trust to Y., as trustee, empowering him to sell said land for the payment of the notes, in the event of their non-payment, and to apply the proceeds of the sale to their payment; that G. afterwards transferred the former of these notes to R., and guarantied its payment, and the second to one Pinckard, who transferred it to P., who is the holder thereof; that on the 29th of April, 1841, R. being indebted to complainants, assigned the note held by him to them to secure so much of his debt to complainants, and deposited the note with Y., the trustee, to be held for that purpose; that subsequently, P. wishing to become the owner of the land, agreed with R. that it should be sold under the trust deed, and that P. would purchase it, and he would assume and pay for R. to the complainants the amount of the note of D. assigned to complainants; and R. directed the trustee to make a deed for the land to P. or his assignees, upon his purchasing the land and making the payment as agreed on, or discharging R. from his debt to that amount; that the trustee made the sale accordingly under the deed in trust; and P. became the purchaser, and afterwards contracted to sell the land to the defendant (J.), and he directed Y., the trustee, to make a deed to J., and the trustee agreed to do so; that neither R. nor P. has paid the complainants the amount due on the note assigned to them, nor made any arrangement to discharge the same. The complainants pray for a rescission of the sale to P., and for a resale of the land to pay the note held by them. P.'s answer admits the agreement between him and R. as stated in the bill, and states that after the purchase by him at the trustees' sale, he sold the land for a valuable consideration to defendant (J.), and requested the trustee to make a deed to him instead of P., and the trustee promised to do so; and that J.'s purchase was without notice of any claim of the complainants. J.'s answer states that he purchased the land from P., and paid him $2,000 in cash and one hundred bales of cotton; that he was informed by P. and Y. before he purchased, that P. had purchased the land under the deed in trust; that the sale had been legally made, and that the trustee was ready to make the deed to J., and the trustee agreed to do so; avers that he made the purchase for a valuable consideration, without notice of any claim of complainants upon the land by means of a note held by them; and he (J.) took and still has possession of the land after his purchase, and claims protection as a *bonâ fide* purchaser. The trustee (Y.) testified that P. requested him to make a deed to J., but that he never did so, as he never received any evidence that P. had

The Trustees of Jefferson College *v.* Prentiss et al.

settled the complainants' claim, and he was directed not to convey until that was done, and at the request of P., he told J. that the title was good, and he never informed J., until he had concluded the purchase, of complainants' claim.

The chancery court decreed, that the trustee should be perpetually enjoined from conveying the land to P. or J.; that the former sale be set aside, and a resale made by the trustee for cash; the proceeds of which should be appropriated *pro rata* to the two notes mentioned in the deed in trust. *Held*, that the decree of the court for a *pro rata* division was correct, although the defendants set up no such claim in their answer.

Debts secured by mortgage or deed of trust and due at the date of the decree of foreclosure, are entitled to payment *pro rata*, unless the original holder, in assigning any of them, designed to impart a right of prior satisfaction to such assignee. 6 How. R. 320; 5 S. & M. 410; 6 Ib. 150; 10 Ib. 630; 23 Miss. R. 178.

In error from the superior court of chancery ; Hon. Stephen Cocke, chancellor.

The facts of this case are substantially stated in the opinion of the court.

*T. Anderson*, for appellees.

The only question in the case is, Did the Runnels note have, by the deed of trust, or acquiesced in under the facts above stated, a lien upon the land in question, or has that lien been lost as against Jones, the vendee of Prentiss ?

It is to be observed, that Prentiss is not litigating any right to assert a lien on the land for the payment of his note, but in effect admits the extinguishment of the lien of his note on the land, by the contract which he made with Runnels, and under which he became, as he alleges, entitled to the land, which title he sets up only for the benefit of Jones, his vendee.

In the first place, having acquired no title whatever to the land, either legal or equitable, because he did not comply with the condition precedent to his obtaining title, he could not convey any title to Jones. But admit, for the sake of argument, that Jones not having any title himself because his vendor had none, yet having paid a valuable consideration to Prentiss, has therefore the right to stand in the place of Prentiss, and demand that Prentiss's equities and rights upon the note assigned

to him shall be administered for his benefit. Then the question arises, whether the Runnels note did not, in fact, by the deed of trust itself, have a priority of lien; or, secondly, if not, whether it did not acquire a priority of lien by virtue of the circumstances in proof.

The principles applicable to the first branch of this inquiry are settled in the case of *Leo Tarleton* v. *The Bank of England,* 1 Cushm. R. 173, and settled, I think, in favor of plaintiffs in error.

In that case, one of the grounds, and I think one of the strongest grounds on which the court placed the decision was, that Burke, Watt & Company, who were the assignors of the party claiming against the bank an equality of satisfaction out of certain property, could not themselves claim, had they continued holders of the assigned note, a *pro rata* distribution of the avails of the mortgage, and therefore held that their assignee, who stood in no better right, could not do so. The court says: " If Burke, Watt & Company had retained the second note which was taken up by them, they could not, in a contest with the appellant, claim a *pro rata* distribution of the avails of the mortgage. They had transferred this note in part payment of a preëxisting debt due by themselves, and their indorsement was designed as a security in addition to the mortgage." And again : " Such being the position of the original holder of the note, it is evident that their assignee could not claim a participation in the mortgage fund."

Could Gwin, in this case, have claimed against Runnels or his assignee, an equal participation in the fruits of the deed of trust, he could not, because he himself had specially guarantied the payment of the Runnels note, and in fact throughout the whole transaction, recognized its right to priority of satisfaction. I ask the court to examine critically the case to which I have referred, as I think the principles there settled are conclusive of this case. *Parker* v. *Mercer,* 6 How. 320; *Cage* v. *Isler,* 5 S. & M. 410; *Terry* v. *Woods,* 6 Ib. 150.

These cases, when examined, will be found to contain nothing in opposition to the view I have taken of the question, but on the contrary much in confirmation of it. Although they

establish the doctrine, not controverted by me, that generally the avails of a mortgage must be appropriated *pro rata* to notes falling due at different times, when all are due at the time the proceeds are realized.

In this case, Gwin in the first place transfers the Runnels note, with a special guaranty of its payment, retaining in the mean time the other note. In the second place, he transfers it before the maturity of the second note, thus undoubtedly giving to Runnels the right under the deed of trust, to have all the property sold, if necessary, to satisfy those due in his hands. Thirdly, when Runnels proceeded to make the sale in pursuance of this right, Gwin sanctioned and recognized it, by himself becoming the bidder and not doubting or denying that the whole of his bid was to be applied to the Runnels note; and lastly, he enters into arrangements to which Prentiss himself, under whom Jones claims, was a party, the object and purpose of which was, to secure in any event the payment of the Runnels note. All these circumstances showed clearly that Gwin intended to do what this court in the case of *Bank of England* v. *Tarleton,* has said he had the right to do, namely, to give Runnels a priority of payment.

But if I am mistaken in this, it is nevertheless clear that the arrangements into which Prentiss entered, clearly had in view a priority of payment to Runnels. Indeed, by the arrangements which Runnels and Gwin had made, the payment of complainants' debt was secured beyond a doubt, and it was only by the actions and conduct of Prentiss, in violation of his own agreement, that this consummation was prevented. He, therefore, and those claiming under him, cannot now be permitted to take advantage of his wrong, and thus defeat the rights of complainants. Runnels would undoubtedly have secured his debt, had it not been for Prentiss's action. He had, in fact, secured a priority of lien by demanding and enforcing a sale before the second note fell due, and it cannot be doubted that he was entitled to all the proceeds of that sale, if necessary to pay his note. 17 Serg. & Rawle, 407; 9 Wend. 410; 9 Ala. 458; 9 Vt. 300; 9 Cow. 317; 8 S. & M. 357.

No counsel for appellees.

Mr. Justice HANDY delivered the opinion of the court.

The material facts set forth in the bill in this case are these. In the month of January, 1839, William M. Gwin sold to one J. Yellott Dashiell a tract of land lying in Washington county, in this State, for which Dashiell executed to him his two promissory notes, one for the sum ·of $4,964.80, payable on the 11th August, 1839, and the other for $4,622.40, payable on the 11th August, 1840, and. to secure the payment thereof, executed a deed in trust to William Yerger, as trustee, empowering him to sell said land for the payment of the notes, in the event of their non-payment, and to apply the proceeds of the sale to their payment; that Gwinn afterwards transferred the former of these notes to Hiram G. Runnels, and guaranteed its payment, and the second to one Pinckard, who transferred it to the defendant Prentiss, who is the holder thereof; that on the 29th April, 1841, Runnels, being indebted to the complainants, assigned the note held by him to the complainants, to secure so much of his debt to them, and deposited the note with Yerger, the trustee, to be held for that purpose; that subsequently Prentiss, wishing to become the owner of the land, agreed with Runnels that it should be sold under the trust deed, and that Prentiss would purchase it, and would assume and pay for Runnels to the complainants the amount of the note of Dashiell assigned to the complainants, and Runnels directed the trustee to make a deed for the land to Prentiss or his assigns, upon his purchasing the land and making the payment as agreed on, or discharging Runnels from his debt to that amount; that the trustee made the sale accordingly under the deed in trust, and Prentiss became the purchaser, and afterwards contracted to sell the land to the defendant Montfort Jones, and has directed Yerger, the trustee, to make a deed to Jones, and the trustee has agreed to do so; that neither Runnels nor Prentiss has paid to complainants the amount due on the note assigned to them, nor made any arrangement to secure the same. The bill prays for a rescission of the sale to Prentiss, and for a resale of the land to pay the note held by the complainants.

The answer of Prentiss admits the agreement between him and Runnels as stated in the bill, and states that after the purchase by him at the trustee's sale, he sold the land for a valuable consideration to the defendant Jones, and requested the trustee to make the deed to him instead of Prentiss, and that the trustee promised to do so, and that Jones's purchase was without notice of any claim of the complainants.

The answer of Jones states that he purchased the land from Prentiss, and paid him for it $2,000 in cash, and one hundred bales of cotton ; that he was informed by Prentiss and Yerger, before he made the purchase, that Prentiss had purchased the land under the deed in trust; that the sale had been legally made, and that the trustee was ready to make a deed; that Prentiss then directed the trustee to make the deed to Jones, and the trustee agreed to do so. He avers that he made the purchase for a valuable consideration, without notice of any claim of the complainants upon the land by means of the note held by them or otherwise, and took and still has possession of the land after his purchase, and claims protection as a *bonâ fide* purchaser.

It appears by the deposition of the trustee, that Prentiss requested him to make a deed to Jones, but that he never did so, as he never received any evidence that Prentiss had settled with the college, and that he was directed not to convey until that was done. The witness further states that, at the request of Prentiss, when Jones called on the witness to know if the title was good, he informed him that in his opinion the title was good; that he never informed Jones, befôre he concluded the purchase, of any claim of the complainants, because he did not doubt that Prentiss would settle with the complainants; that he stated to him, in answer to his inquiries before the purchase by him, that he believed a conveyance by him, as trustee, would vest a good title in him, Jones ; that at a sale made by him, as trustee, Prentiss had become the purchaser, and that a conveyance to him, by Prentiss's order, would give him a good title; he stated nothing to Jones in relation to the interest of the complainants, not doubting that Prentiss would settle with them, as the witness understood that he had agreed to do.

At the final hearing, the chancellor decreed that the trustee should be perpetually enjoined from conveying the land to Prentiss or Jones; that the former sale be set aside, and a resale made by the trustee for cash, the proceeds of which should be appropriated *pro rata* to the two notes mentioned in the deed in trust. The complainants prosecute this writ of error to reverse this decree.

It is insisted in behalf of the plaintiffs in error that this decree is erroneous in giving a *pro rata* distribution of the proceeds of the sale to the two notes, on several grounds, which we will examine.

The first objection presents the question whether it was proper to make a decree giving a ratable distribution of the proceeds to the two notes, inasmuch as the defendants set up no such claim in their answer.

The bill was filed for the purpose of carrying into execution the deed of trust, and it shows that both of the notes secured by it were outstanding and unpaid. The answers claim that the land had been sold by the trustee, and that under the circumstances stated, Jones was entitled to hold it. This claim was held inadmissible, and the decree had then to be made upon the rights of the parties as they were shown by the bill and proofs. It was not necessary that the defendants should claim their ratable proportion of the proceeds of the trust property, in order to have a decree for the same, provided they were entitled to it by the facts of the case appearing by the bill and deed of trust; because the scope of the bill was to have an execution of the trust, and in rendering the decree, it became necessary for the court to look to the circumstances of the transaction as they appeared from the bill and proofs, and to determine what were the legal rights of the respective parties under the trust deed. That the defendants had interposed a particular defence which was not allowed, did not render it improper for the court to render the decree, ascertaining the rights of the parties under the trust; for that is what the complainant had virtually called upon the court to do in praying for an execution of the trust. Surely, in decreeing an execution of a trust, it is not improper for a court of chancery to ascertain

what are the rights of the respective *cestuis que trust* under the deed; and though one claims priority of right over the other, that does not preclude the court from determining the respective rights, but rather the more directly presents the question for adjudication. If the bill had stood upon *pro confesso*, it would still have been proper for the court to look to the deed, the bill, and the proof, and before decreeing an execution of it, to determine what were the legal rights of the parties under it.

Secondly. It is insisted that the decree is erroneous, because the note transferred to Runnels was indorsed with a special guaranty of payment by Gwin, before the maturity of the note assigned to Prentiss, and before the assignment of that note, which gave the former the right of prior satisfaction.

It has been held by a series of decisions in this court, that all debts secured by mortgage or deed of trust, and due at the date of the decree of foreclosure, are entitled to payment *pro rata*, unless the original holder, in assigning any of them, designed to impart a right of prior satisfaction to such assignee. 6 How. 320; 5 S. & M. 410; 6 Ib. 150; 10 Ib. 633; 23 Miss. Rep. 178.

In the last case cited, it is held that no particular form of assignment is necessary in order to impart a preference to an assigned note; that "it is sufficient if it appear to be the clear and certain intention of the parties to convey the right;" and that this intention may be collected from the circumstances of the transaction. And the court conclude that, under the circumstances of that case, it was the "evident intention" of the parties that the assignee should take the notes with a right of prior satisfaction. The principal facts stated as showing this intention are, that the assignee held a prior lien on the property, and agreed that the same should be cancelled for the accommodation and benefit of the assignor, and that a new mortgage and notes should be taken by the assignor, a part of which notes were assigned to the party who held the previous lien; that the assignment was made in Louisiana, and must be presumed to have been made with reference to the law of that State, by which the prior assignee has the right of prior satisfaction; that it could not be supposed that the creditor, who

5.*

had consented to the arrangement of relinquishing the previous lien and taking the new notes and mortgage, intended to give up the right of prior satisfaction which existed under the original lien; and that under these circumstances, Burke, Watt & Co. could not claim an equal participation in the mortgage fund with the Bank of England, by taking up and becoming the holders of one of the new notes, and could not transfer such a right to Tarleton.

It is manifest that this case turns mainly upon the equity of the Bank of England against Burke, Watt & Co., arising from the peculiar circumstances of the case, showing that it was intended to preserve the original lien of the bank, and that the new arrangement having been made for the benefit of Burke, Watt & Co., by the indulgence of the bank, it must be presumed that it was not intended to place the bank in a worse condition than she was in under the previous lien which she held; and that it would have been justifying an act of bad faith in Burke, Watt & Co., to permit them, or Tarleton claiming under them, to set up one of the notes made for their accommodation as a means of defeating the priority of the bank.

In the present case there appear to be no equitable circumstances between Runnels and Gwin which should give such an effect to the transfer of the note to Runnels, as against the rights of Prentiss. There is the simple act of indorsing the note first due under the deed of trust to Runnels, with a guaranty of payment by Gwin. How could it appear that this was intended to give a preference to this note over the other note subsequently transferred to Prentiss? If such had been the intention, is it not most reasonable to presume that the indorsement would have been made so as to show that such was the intention or agreement, instead of making an indorsement which might render Gwin personally liable? It is not possible to determine with certainty what intention the parties had in making such an indorsement. But it would appear to be clear that Runnels was not willing to take the note with the security of the trust deed, though he might have proceeded immediately to sell under it, and realize the money, before the second note

The Trustees of Jefferson College *v.* Prentiss et al.

became due. He, therefore, required the guaranty of Gwin. This shows that Runnels did not rely on any right of prior satisfaction. It is fair to presume that Gwin believed that the land was sufficient to pay both notes, and that he could safely guaranty the payment of the first, and afterwards use the second with all the security of the trust deed. He was then the holder of the second note; and nothing would have been more simple or natural than that he should have indicated that the first note should be entitled to priority of payment, if such had really been the intention of the parties. Suppose Gwin had indorsed the second note expressly giving priority of satisfaction to it, could it be said that the preference so designated would not have prevailed, notwithstanding the guaranty of the first note? It could not; and yet this could not be the case if the mere guaranty was intended to give priority.

It is plain that Gwin did not directly give a preference to the first note, by his indorsement of guaranty; and if he had so intended, it is to be presumed that he would have done it, instead of incurring a personal collateral liability by the indorsement.

Nor does the record show any circumstances in relation to the transaction from which such an intention can be inferred, as a matter of equitable right in behalf of Runnels.

To give such an effect to the guaranty would, therefore, operate not to carry out any intention or agreement of the parties at the time of the transfer, but to indemnify Gwin upon his guaranty to Runnels, and thus cause a loss to fall on Prentiss, to whom Gwin had transferred the second note, for aught that appears in the case, in ignorance of the intention now relied upon, and who must be presumed to have taken it under the belief that he was entitled to all the right of equality of payment with the other note which it had by the law of the land. It was a secret equity at furthest, of which Prentiss had no notice, and by which he should not be prejudiced.

It is insisted, that after the transfer of the first note to Runnels, Gwin, as the holder of the second note, could not have come in for equality of payment with Runnels, and that Prentiss, his assignee, cannot occupy a better position than he did. This rule is properly applicable under certain equitable circum-

stances; but in the absence of such circumstances, the decisions of this court above referred to place the assignees upon an equal footing, though the one be prior in time to the other, upon the principle that in such cases equality is equity.

Again, it is said that the arrangement entered into between Prentiss and Runnels admitted the priority of Runnels' claim, and that Prentiss, having failed to carry out his agreement, should not be permitted to enjoy the benefit of the trust fund in equal proportion with Runnels.

It does not appear that Prentiss ever expressly recognized the priority of Runnels' note; nor do we think that his conduct can charge him to such an admission at law. He held the second note, and was desirous to get control of the first, not because it was entitled to priority of payment over the second note, but because it was a charge upon the property, which would prevent his becoming the purchaser, and getting the control of the land. It was at least entitled to satisfaction upon the same footing as the note held by him, and this would prevent him from accomplishing his purpose of getting control of the land until that note was removed. Hence his desire to get control of it; but his conduct by no means estops him to deny an admission of its priority.

In consequence of a misunderstanding between the parties in relation to the note held by Runnels, it appears that the sale made by the trustee cannot be permitted to stand, and the object of the bill is to treat it as null and void. The parties must, therefore, be restored to their rights, as if the sale had never been made; and we do not see any thing in the case which should deprive Prentiss of the rights he had as an assignee of the second note under the security of the deed of trust.

We think that the decree of the chancellor is in accordance with the principles heretofore settled by this court, and it is, therefore, affirmed.