## John D. Lee et al. v. J. M. Griffin et al.

SURETY: RIGHT OF SUBROGATION.—A surety cannot maintain a bill in equity to foreclose a mortgage in favor of the creditor, until he has either paid or secured the debt; but it seems that he may at any time maintain a bill *quia timet* to prevent the persons in possession of the mortgaged property from selling or otherwise disposing of it.   See 23 Miss. R. 182.

APPEAL from the District Chancery Court at Yazoo city.   Hon. George W. Dogherty, vice-chancellor.

*R. S. Holt,* for appellants.

The *original* and *amended* bills set forth clearly and concisely the facts upon which complainants claim the relief denied to them by the decree of the Vice-Chancery Court.

The case made by these facts, as alleged by complainants, and admitted by the demurrer, presents two questions for consideration.   First.   Is a surety, before paying the debt, and where the principal debtor is insolvent, entitled in equity to have enforced for his indemnity or reimbursement a mortgage or other security for the payment of the debt held by or vested in the creditor?   Second.   If the mortgage or other property, subject to the creditor's lien, has been, by the debtor, sold to a third party, who takes it in payment of a pre-existing debt, with full knowledge of the

mortgage or other lien,—with full knowledge of the insolvency of the debtor, and of the rights of the creditor and the sureties,—and who, in order to defeat the claims of the creditors and sureties, removes the property to parts unknown, or conceals it, so that it cannot be found, or sells it to persons unknown, for its full value, without disclosing the existence of the lien,—is such third party responsible to the sureties in equity for the value of the property?

1. First: In support of the right of the surety to this relief, we cite the following authorities, directly affirming the right. 1 Ham. (Ohio) R. 533; 4 Dessaus. R. 44; 3 Rich. Eq. R. 179; 1 Rand. R. 53. Second: A surety, before payment, is, in equity, entitled to compel the debtor to make, and the creditor to receive payment of the debt. 1 Story, Eq. §§ 639, 849; 4 Johns. Ch. R. 131; 6. Paige, R. 260; 1 Vern. R. 190; 2 Story Eq. § 849; 17 Johns. R. 394.

If the surety can, as these authorities prove, enforce payment, for his indemnity and protection, before he has paid the debt, by a decree *in personam*, he must, upon the same principle, be entitled to enforce a mortgage, or other lien, for that purpose:

2. The responsibility of the defendant Griffin, under the second proposition or question, is insisted on upon general principles.

First. The right of the sureties to have the property subjected for their protection to the payment of the debt, was an equitable right, and one in which they were as much entitled to protection as any other, and for the violation of which they were entitled to redress; and being purely an equitable right, recognized in courts of equity alone, such courts only can protect it, or relieve against its violation.

Second. That the action of the defendant, Griffin, was violative of this right is obvious. It has placed the property wholly beyond the reach of the sureties, and rendered the enforcement of their rights impossible; and this has been done with a full knowledge of the rights of the sureties, and with the intention thereby to defeat them. Such is the case admitted by the demurrer; and surely no stronger case of a violation of right could be made out.

Third. The property purchased by Griffin of Perry, came to his hands charged, in the view of equity, with a trust, of which he had

full knowledge. He was bound to use and dispose of the property in such manner as was consistent with the rights of the beneficiaries in the trust, to exercise his own limited and immediate rights, so as not to injure their prior and superior rights.

His possession was essentially that of a trustee; and when he disposed of the property in violation of the trust, and for the purpose of defeating it, he incurred all the personal responsibility of an ordinary trustee under similar circumstances.

On these grounds it is insisted that the court below erred in sustaining the demurrer.

*Jones* and *Bowman,* for appellees.

The statutory mortgage, (Hutch. Code, 675, § 3,) upon property of any deceased person or minor, sold by order of any Probate Court, was clearly and evidently intended for the benefit of the estate, to give additional security for the payment of the property sold. It was not intended to operate for the benefit and use of the purchaser's sureties on the bond given for the purchase-money. The sureties engaged to pay the indebtedness in default of the principal, and they have no right to enforce the lien against the property sold. Where there is a fund or pledge as security, in addition to the personal responsibility of the principal and surety, the creditor is at liberty to proceed against the surety personally, without resorting in the first instance to the fund or security. Burge on Suretyship, 324; *Wright* v. *Simpson,* 6 Ves. 734; *Wright* v. *M'Nutt,* 3 Bro. C. C. R. 326.

It is a general rule, that a surety is entitled to all the securities of the creditor, upon payment of the debt, but until payment, the surety is not damnified or injured, and is not entitled to the protection of a court of equity. He acquires no right to the security whatever before payment by him of the note or bond. Until then, the security or mortgage resides in the creditor, and is to operate for his benefit solely. 1 Story, Eq. Jur. § 499; *Stanwood* v. *Clampitt,* 23 Miss. R. 373; 1 Spence, Eq. Jur. 638; *Craythorne* v. *Swineburne,* 11 Ves. 165; *Campbell* v. *M'Comb,* 4 Johns. Ch. R. 535.

The case above cited, of *Stanwood* v. *Clampitt,* 23 Miss. R. 373,

is conclusive upon this question. In that case the purchaser gave
a mortgage upon the property purchased at administrator's sale,
to her surety for his indemnity; and this court said:—"The
statute gave the administrator a mortgage on the land and slaves
purchased by Elizabeth Daniels. A surety upon *payment of the.*
*notes,* would be subrogated to the rights of the administrator in
this mortgage." In the same case, this court further says, "It is
equally clear, that the defendant in this suit, upon paying the note
given to the complainant to satisfy him, to the amount of one-half
the money which he alleges that he paid as security, could file his
bill against the complainant, who is in possession of the property,
and subject one-half of it, by virtue of the statutory mortgage in
favor of the administrator, to satisfy the amount paid as security."

In the case under consideration, the bill alleges that the bond
or note is wholly unpaid. This allegation of itself places them
entirely without the pale of protection or relief from a court of
equity.

But the appellant insists that this is a bill *quia timet,* and under
such bills, even before injury or loss, a party is entitled to relief.

Bills *quia timet* are analogous to the *brevia anticipantia,* or
writs of prevention at the common law, of which Lord Coke num-
bers six, (Coke on Litt. 100, a,) and the objects of both are
of a similar nature. To entitle a party to the benefit of *brevia*
*anticipantia,* he must show a legal right or interest. Bills *quia*
*timet* are in the nature of writs of prevention, to accomplish the
ends of precautionary justice. The party seeks the aid of a court
of equity, because he fears some future probable injury to his
rights or interest. Story, Eq. Jur. § 826; Mit. Eq. Pl. 171,
172.

The jurisdiction of courts of equity is applicable to cases where
there is a present right of enjoyment, and to cases where the right
of enjoyment is future or contingent. Story, Eq. Jur. § 827.

It cannot be contended that the sureties here have any right
whatever to the property in question. They have not placed
themselves in a condition to be even subrogated to the rights of
the creditors, the executors of Brister. And even Brister's exe-
cutors have no right to the property. For the books say, that

a lien is not in strictness a *jus in re*, or a *jus ad rem;* but it is simply a right to possess and retain property until some charge attaching to it is paid or discharged.    Who is entitled to have the charge or lien on this property paid?    Not the sureties of the purchaser, but the administrator, to whom the law has given it.    The sureties now, according to their own showing, having no right whatever to have this property subjected to the lien.

Bills *quia timet*, are allowed to sureties only against their debtors or creditors.    If they have any apprehension of loss or injury from the delay of the creditors to enforce payment of the debt against the principal debtor, they may file a bill of this sort to compel the debtor to discharge the debt or other obligation for which surety is responsible, or may compel the creditor to sue the principal, and collect from him the debt in discharge of the surety. But then, in this case, the surety is compellable to deposit the money in court for the payment of the creditor; and it is, in fact, but an indirect subrogation to the rights of the creditor, upon the virtual payment of the debt by such a deposit.    Story, Eq. Jur. § 849, and note 2; *Hayes* v. *Ward*, 4 Johns. Ch. R. 129, 132; *Wright* v. *Simpson*, 6 Ves. 734; *King* v. *Baldwin*, 2 Johns. Ch. R. 561, 563.

The plaintiffs in error, if they can even acquire any right for the enforcement of this lien, have not availed themselves of the established means within their power of doing so.    They admit that they have never paid the debt due to the executors of Brister, nor offered to do so.    The executors of Brister have pursued the legal remedy against the debtor and sureties, and there is nothing in the bill which shows ground for equitable relief.

We deem it almost unnecessary to call the attention of the court to the deficiency and discrepancy of the amendments to the bill of complaint.    An amended bill should be an addition to, and amplification of the original bill, and when allowed, becomes incorporated into and forms part of the original bill, and together must constitute an entirety.    The amendments must form a part of the substance and not the substance itself.    Mit. Eq. Pleads. 67, and note; *Hurd* v. *Everett*, 1 Paige, Ch. R. 124; *Parker & Bliss* v.

*Grant,* 1 Johns. Ch. 434; *Rogers* v. *Rogers,* 1 Paige, 624; *Dickson, adm'r, &c.* v. *Pourdester et al.,* Freem. Ch. R. 725.

The amendments in this case set up new, substantive, and distinct matter, which forms a new case, and constitutes, of itself, an original bill. In the first bill filed, the plaintiffs in error proceed *in rem,* against the property, to subject that to the executor's lien. They allege that the property was in the hands of Griffin, one of the defendants in error.

In the amended bill they say, Griffin has removed the property wrongfully, and has either sold or concealed it. They there seek relief *in personam* against him, to make him personally liable for the property. It is true, that there is no special prayer for this purpose; but if they had any right to the property, and Griffin wrongfully removed it, he would be personally liable, and the relief sought under general prayer must conform to the allegations of the bill. Upon this amended bill, a case is presented upon which a " separate and distinct decree, not only may be, but must be made without reference to the original bill."

The case before referred to of *Dickson* v. *Pourdester et al.,* Freem. Ch. R. 725, we think conclusive upon this part of the case now under consideration, and to it we would particularly invite the attention of the court.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Vice-Chancery Court, at Yazoo city, sustaining a demurrer to the complainant's original and amended bill of complaint.

The facts are as follows:—John and Thompson Brister, as executors of the last will and testament of one T. Brister, deceased, sold certain property of the testator under an order of the Probate Court of Yazoo county, at public sale, on a credit of eight months, when one James Perry became the purchaser. Perry executed his note, with the complainants as securities. He afterwards sold the property, which consisted of mules, wagon, &c., to the defendant, Griffin, who has since sold or secreted the same. Perry being insolvent, the securities insist that they have a right to go into a court of equity to enforce the statutory mortgage in favor of the

executors, before paying or otherwise securing the debt.   This is briefly the case as presented by the original and amended bill—which may be considered as one bill—the amended bill being intended to correct certain errors as to fact in the original bill.

The first, and indeed the only question requiring consideration is, whether the securities before paying or securing the debt, can be subrogated to the rights of the executors, or compel them to resort to the mortgaged property, before proceeding to collect the debt from the securities.   This point has been settled by this court in the *Bank of England* v. *Tarlton et al.*, 23 Miss. R. 182.   The court in that case say, " The privilege of substitution in behalf of a surety who has paid the debt of his principal, is of purely equitable origin, and is based exclusively on the principles of natural justice.   It has been uniformly held to exist only in cases where the surety has actually paid, or has secured the payment of the debt due by his principal."

This would be the rule which would govern the case presented by the original bill, alleging the property to be in the possession of the sub-vendee, Griffin.   But the rule could not even be so favorably applied under the amended bill, which alleges that the property has been either disposed of or secreted by the sub-vendee. The question in such case is, not whether the executors shall first proceed to subject the property to the payment of the debt, but whether they shall proceed to hold the sub-vendee liable by an action or proceeding to recover damages, before proceeding against the sureties.

A bill, no doubt, before payment, could be maintained by the sureties, to prevent the parties from selling or otherwise disposing of the property; but when such disposition was made before the bill was filed, it is then merely a question of damages, if there be any remedy at all against the parties.

Decree affirmed.