F. M. GOAR ET AL. *v.* W. A. McCANLESS, TRUSTEE.

1. ASSIGNMENT. *Priority among assignees. Dividing debt.*
   All debts protected by the same security are entitled to share *pro rata* in its proceeds, in the event of a deficiency; but, if the payee, in assigning them gives priority to one or more, this will be observed and enforced by the courts. *Bank of England* v. *Tarleton,* 23 Miss. 173, cited.

2. SAME. *Separate notes and securities. Notice of priority.*
   If the payee at the inception of the debt divides it into notes and secures each by a separate trust-deed, so that a preference by assignment can be given, and the assignee of the first note contracts for the preference, and promptly records the deed by which it is protected in advance of the record of those protecting the other notes, this confers the priority, even if persons to whom the other notes are subsequently assigned by the payee are entitled to notice.

APPEAL from the Chancery Court of Lee County.

Hon. L. HAUGHTON, Chancellor, being sick, Hon. F. A. CRITZ presided.

On December 19, 1876, G. B. Merritt sold and conveyed to one Stevens certain real and personal property, on a credit of one, two and three years. Three notes for two thousand dollars each, maturing in twelve, twenty-four, and thirty-six months, were given to Merritt by Stevens, and each note was secured by a separate trust-deed on the property sold. On December 23, 1876, Merritt sold the first note, which matured on December 19, 1877, to Merritt, Allen & Co., the owners of the Exchange Bank at Tupelo, Mississippi, and assigned the note, with the trust-deed which secured it, to the purchasers. The trust-deed was filed for record the same day, in the office

of the chancery clerk of Lee County, where the property was situated. The other two notes and trust-deeds were taken to Mobile, Alabama, and left with J. L. Murphy, who held them, apparently for Merritt, until February, 1878, when they were brought back to Tupelo by Merritt, who delivered them to Morton & Elliott, merchants of that place, as collateral security for his indebtedness to this firm and advances which they were to make him. These trust-deeds were filed for record on February 22, 1878, after they came into the hands of Morton & Elliott. F. M. Goar, the president of the Exchange Bank, was trustee in all three deeds. On account of his interest in the note purchased by the bank, he declined to act as trustee. H. C. Medford, one of the appellants, was appointed trustee in the deed held by the bank, and the appellee, W. A. McCanless, was made trustee in the other two deeds, then held as collateral security by Morton & Elliott. In December, 1879, H. C. Medford advertised all the property for sale under the bank's trust-deed, when W. A. McCanless, trustee in the other deeds, filed a bill alleging that the first note was paid, and that, if not, the notes were all three due and were of equal dignity; that Medford would apply the proceeds of the property, which was insufficient to pay all the notes, to the first one before the others, and prayed that Medford be enjoined from selling; that an account be taken, the property sold, and the proceeds applied *pro rata* in payment of the amounts due on the several notes.

After the injunction was served the defendants, F. M. Goar and J. M. Allen, composing the firm of Merritt, Allen & Co., and doing business under the name of the Exchange Bank, and G. B. Merritt, answered the bill. They denied that any payment had been made except a small one credited on the note of the bank. They also denied that the liens were of equal dignity, and claimed that theirs was superior to the others: First, because it was first made, first assigned, first due, first secured, and its security first recorded. Second, because Merritt's purpose in dividing the debt and securing the notes

by separate deeds was to enable himself to impart this prefer-
ence to them in their order by recording them at different
times, and that to carry out his contract with the bank, made
in accordance with this purpose, he agreed that the first trust-
deed should be filed for record and the others withheld, and
that the first one, which he then held with the others, should,
when he sold it to the bank, be a preference lien over the other
two deeds.

The evidence for the complainant failed to show any
payment but the one credited. The defendant's evidence
proved the special agreement for preference set up in their
answers. But the assignment to the bank was in these
words : —

" For value received, I transfer the within note to Merritt,.
Allen & Co.

" December 23d, 1876. G. B. MERRITT."

On the objection that the defendant's evidence set up a parol
agreement contemporaneous with this writing, the chancellor
excluded their testimony.

From a decree granting substantially the relief prayed for
in the bill, the defendants appealed.

*J. M. Allen,* for the appellants.

1. Where there are several notes secured by different deeds
of trust and falling due at different times, and they have been
assigned, the preference should be given to the one which falls
due first. Our decisions, which conflict with the current of
American authority, in holding that mortgage notes secured
by the same instrument are payable *pro rata* if all due, are
erroneous, and should not be extended. The assignment of
the note and mortgage is alone evidence sufficient to show a
design to give a preference. Jones on Mort. 822 ; *Walker* v.
*Dement,* 42 Ill. 272 ; *Bank of England* v. *Tarleton,* 23 Miss.
173.

2. In this case, however, an agreement for the preference
is proved. The owner of the notes had the right to contract

thus. Jones on Mort., sects. 606, 822. It was competent to prove this by parol evidence. The original contract was verbal and only part of it was reduced to writing. 1 Greenl. on Ev. 284 ; Whart. on Ev., sect. 1015. The evidence is not introduced for the purpose of altering the writing, but of proving the entire contract and thus explaining the written part. *Miller* v. *Fichton*, 31 Pa. St. 260. When the contract, as in this case, is verbal and not intended to be embraced in the writing, it can be proved by parol. *Randle* v. *Turner*, 17 Ohio, 268 ; *Gilman* v. *Moody*, 43 N. H. 371. The cases cited by appellee's counsel merely state the general doctrine, that a written contract cannot be varied by verbal proof.

*Blair & Clifton*, for the appellee.

The general rule in cases like this one is that the notes should be paid *pro rata*. *Cage* v. *Iler*, 5 Smed. & M. 410 ; *Teny* v. *Woods*, 6 Smed. & M. 150. The application of this rule cannot be prevented by an understanding existing only in parol, and made contemporaneously with the written contract. *Martin* v. *Cole*, 104 U. S. 30 ; *Bast* v. *Bank*, 101 U. S. 93 ; *West* v. *Smith*, 101 U. S. 271. Parties who have put their contracts into writing cannot vary them by parol evidence: *Wren* v. *Hoffman*, 41 Miss. 619. There is here no question of the consideration. *Cooke* v. *Blackburn*, 57 Miss. 691 ; *s. c.* 58 Miss. 539. But this preference, even if it could be given by parol, cannot be enforced against innocent purchasers of the other notes, who have paid value for them without notice of the understanding. *Jefferson College* v. *Prentiss*, 29 Miss. 55 ; *Cutler* v. *Supervisors*, 56 Miss. 115 ; *Ethridge* v. *Gallagher*, 104 U. S. 35. This testimony is too vague to vary the written contract, even if it was admissible for this purpose.

*W. L. Clayton*, on the same side.

If the fund is insufficient to pay all the notes, the holders take *pro rata*. *Parker* v. *Mercer*, 6 How. 320 ; *Henderson* v. *Herrod*, 10 Smed. & M. 631 ; *Pugh* v. *Holt*, 27 Miss. 461 ; *Wooten* v. *Buchanan*, 49 Miss. 386. The parties' rights are measured by their written contract, which cannot be varied by

parol.  *Bast* v. *Bank*, 101 U. S. 93;  *Martin* v. *Cole*, 104 U. S. 130.

CHALMERS, J., delivered the opinion of the court.

While it is the settled law in this State that all debts protected by the same security are entitled to share *pro rata* in its proceeds, in the event of there proving to be a deficiency, it is equally well settled that the rule is otherwise where the payee, in assigning them, gives a priority to one or more of them, and that where this is done such priority will be observed and enforced by the courts.  *Bank of England* v. *Tarleton*, 23 Miss. 173.

It is impossible to conceive of a plainer instance of conferring such priority than the present.  From the inception of the debt the payee so shaped its form, that a preference in the assignments might be given, and by securing each of the notes by a separate trust-deed, not only manifested this intention, but did it in such shape that every subsequent assignee was bound to know, or at least be put upon inquiry.  When he assigned the first note the assignees contracted for a preference and did all they could to give notice to the public by promptly recording the trust-deed by which it was protected in advance of the record of those protecting the deferred notes, so that even if the assignees of the other notes were entitled to notice as claimed by counsel, it is difficult to see how it could have been more effectively given, except by personal communication, which would, of course, be generally impossible.

Decree reversed and bill dismissed.