CANAL BANK & TRUST CO. *et al. v.* BREWER *et al.*[*]

(two cases).

(In Banc, June 6, 1927. Suggestion of Error Overruled Oct. 10, 1927.)

[113 So. 522. Nos. 26344, 26527.]

1. INJUNCTION. *Preliminary injunction against assignments of notes by insolvent held properly dissolved as to assignment to attorneys for legal services and retained as to assignment to daughter.*

Preliminary injunction, in suit to set aside alleged fraudulent assignments by insolvent of notes, of one-half interest therein to attorneys in consideration for legal services in recovering pos-

session of notes, and one-half interest to daughter for a recited consideration of cancellation of debt to her and assumption of debt due by assignor to his wife, *held* properly dissolved as respected assignment to attorneys, and retained as to assignment to daughter. (Affirmed by divided court.)

2. APPEAL AND ERROR. *Case cannot be remanded without decision for hearing newly-discovered evidence.*

Case cannot be remanded from supreme court without decision for hearing by chancellor of newly-discovered evidence which was unknown at time case was tried in lower court.

3. JUDGES. *Motion in vacation to dissolve preliminary injunction granted by special judge under agreement of attorneys held improperly presented to chancellor of another district (Hemingway's Code, sections 716, 718, 262; Constitution 1890, section 165).*

Where member of the bar in accordance with agreement of attorneys as authorized by Constitution 1890, section 165 (Hemingway's Code, section 716 [Code 1906, section 996]), was appointed to preside in place of regular judge, who was disqualified, and injunction was issued therein, a motion to dissolve such injunction in vacation was improperly presented to chancellor of another district after certification of regular chancellor's disqualification under Hemingway's Code, section 718 (Code 1906, section 998 [Ann. Code 1892, section 922].), since section 262 (Code 1906, section 506), expressly providing that chancellor may with consent of parties or solicitors try causes and deliver opinions and sign decrees in vacation, is not limited to regular chancellors.

On motion to correct decree. Motion overruled. For former opinion, see 113 So. 552.

1. COSTS. *Five per cent damages on unsuccessful appeal is in nature of compensation to successful appellee for expenses incurred (Hemingway's Code 1927, section 3407).*

Allowance of 5 per cent damages under Code 1906, section 4926 (Hemingway's Code 1927, section 3407), in case of unsuccessful appeal, is in the nature of compensation to the successful appellee for expenses incurred by him through wrongful appeal by his adversary.

2. COSTS. *Law allowing damages on unsuccessful appeal must be strictly construed against claim of successful party (Hemingway's Code 1927, section 3407).*

Code 1906, section 4926 (Hemingway's Code 1927, section 3407), allowing 5 per cent. damages in case of unsuccessful appeal, must be strictly construed against the claim of the successful party.

3. STATUTES. *Chief aim of courts in construing statute should be to reach Legislature's real intention; construction bringing about unthought-of and unjust results will be avoided if possible.*

In construing a statute, chief aim of courts should be to reach real intention of the Legislature, and construction which will bring about manifestly unthought-of and unjust results will be avoided if possible, and, if necessary to avoid such results, courts will widen or narrow letter of statute.

4. COSTS. *Law authorizing damages on unsuccessful appeal held inapplicable to appeal from interlocutory decree (Hemingway's Code 1927, sections 9, 3407).*

Code 1906, section 4926 (Hemingway's Code 1927, section 3407), providing for 5 per cent damages in case of unsuccessful appeal, *held* applicable only to final decrees and not to appeals from interlocutory decrees under Laws 1924, chapter 151, section 17 (Hemingway's Code 1927, section 9), requiring joint action of court and appellant.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1116, n. 57; Bankruptcy, 7CJ, p. 349, n. 82; Bills and Notes, 8CJ, p. 620, n. 20; Injunctions, 32CJ, p. 427, n. 64; Judges, 33CJ, p. 1036, n. 78; Mortgages, 41CJ, p. 508, n. 4; Costs, 15CJ, p. 241, n. 11; p. 280, n. 98; p. 285, n. 43 New; p. 286, n. 56; Statutes, 36Cyc, p. 1106, n. 29; p. 1107; n. 35, 36; p. 1108, n. 38, 39, 40, 46, 47, 48, 52; p. 1112, n. 72; Ascertainment of real intention of legislature as primary consideration in construction of statute, see 25 R. C. L. 960; 3 R. C. L. Supp. 1435; 4 R. C. L. Supp. 1611; 5 R. C. L. Supp. 1355; 6 R. C. L. Supp. 1494.

APPEALS from chancery court of Coahoma county, Second district.

HON. S. I. OSBORN, Special Chancellor, and HON. N. R. SLEDGE, Chancellor.

Suit by the Canal Bank & Trust Company and another against Earl Brewer and others. From decrees dissolving preliminary injunctions granted therein, complainants separately appeal, and defendants cross-appeal. Affirmed as to one appeal, and reversed as to other, and case remanded.

See, also, 112 So. 394.

*Maynard, FitzGerald & Venable,* for appellants.

I. *Jurisdiction of Judge Sledge.* In our opinion the stipulation of counsel and the appointment of him by the governor constituted Judge Sam I. Osborne the sole and exclusive power to hear and determine Cause No. 3851 in all of its branches and no earthly power could remove him from that position other than impeachment.

*Kelly* v. *Kiersky,* 79 Miss. 168, has absolutely no bearing on whether or not Judge SLEDGE could exercise jurisdiction herein. As stated by Judge McGowEN in *Cashin* v. *Murphy,* 138 Miss. 853, "Sections 995, 996, 998, Code. of 1906 (Hemingway's Code, sections 715, 716 and 718) contain and comprise all the law of Mississippi on the subject of the disqualification of a judge and aside from the statement contained in the Constitution were under the common law." See, also, *McCloud* v. *McCloud,* 88 Miss. 729.

It is our first contention that no chancellor can act out of his own district in vacation, and can act out of his own district in term time only by virtue of section 717, Hemingway's Code (Code of Mississippi, section 996). This is plainly announced in *Adams* v. *Kyzer,* 61 Miss. 407.

Our idea of the statute is based on the statment in the law, section 689, Code of 1906 (section 467, Hemingway's Code). If however, this court should differ with us and hold that under section 998, Code of 1906 (section 718, Hemingway's Code), upon the disqualification of the rightful judge of the Seventh chancery court district and a certification by him that the judge of the Third chancery court district, the Honorable N. R. Sledge had the right to come into the Seventh chancery district in vacation and hear a cause there, then, nevertheless, we still say without fear of contradiction that under the agreement, Exhibit A hereto, and the appointment by the governor, Exhibit B hereto, the Honorable Harvey McGehee had already been disqualified and that the Honorable Sam I. Osborne was the sole and exclusive presiding judge in

Cause No. 3851 in the Seventh chancery court district of Mississippi.

But the appellees answer to this that under the decision of *Kelly* v. *Kiersky,* 79 Miss. 168, Judge Sam I. Osborne, being a special chancellor appointed by the governor, could not act in vacation. Our reply to this is: (1) That the appellees having agreed that Judge Osborne could try the case in vacation were in no position, without his certificate of disqualification, to ask any other chancellor to act, under the objection of appellants; and (2) Judge Sledge had no authority to act until it had been certified to him by Judge Osborne that he, Judge Osborne, was disqualified.

The hearing before Judge N. R. Sledge was *coram non judice,* and this case should be reversed on that ground alone.

II.   *The liability of Brewer to the Canal Bank & Trust Company on the notes of Gidden & Townsend and Mc-Nally.* The Canal Bank & Trust Company received these notes as collateral security for the five hundred thousand dollars owing to it by Mr. Holland. They were received for a present loan and in good faith, and the bank occupied then and now the position of *bona-fide* purchasers and holders for value. Jones on Collateral Security, section 89, page 105; *Swift* v. *Tyson,* 16 Pet. 1 (10 Ed.), page 865; *Brooklyn, etc., R. R. Co.* v. *Nat'l Bank,* 102 U. S. 14, 26 L. Ed. 61; *Dix* v. *Tully,* 14 La. Ann. 456; *Smith* v. *Isaacs,* 23 La. Ann. 454; *La. State Bank* v. *Gaiennie,* 21 La. Ann. 555; *Gardner* v. *Maxwell,* 27 La. Ann. 561; *Steeg* v. *Godifer* (La.), 102 So. 407; *First Nat'l Bank* v. *McGrath,* 111 Miss. 672; Joyce on Defences to Commercial Paper, section 561; *Am. Nat'l Bank* v. *Hill,* 169 N. C. 235, 85 S. E. 209; Jones on Collateral Security, section 104.

If the bank had failed to sue Brewer or to collect the Gidden & Townsend and McNally notes to the best of its ability, it would be liable to Holland for such failure.

Brewer's defenses are untenable and fallacious. He is estopped to set up that his endorsement was voluntary or for accommodation; and this cannot be true for the reason that Mr. Earl Brewer and Mr. Ed. Brewer endorsed these notes at the time of their taking by the bank. *Benjamin Pearl* v. *Cartwright,* 81 Miss. 300; *Stubblefield* v. *Roper et al.,* 136 Miss. 831.

The other defense that Mr. Brewer makes to these notes is that the notes have been subordinated. This is no defense. This court has decided in *Tarleton* v. *Bank of England,* 23 Miss. 173, that although the proceeds of a mortgage should be distributed *pro rata* among all the notes secured by the mortgage, yet, nevertheless, the owner of all the notes may, if he so desires, subordinate certain ones of these notes to the payment of certain other ones of said notes and the maker or co-maker or endorser of all the notes cannot complain. See *Goar* v. *McCanless,* 60 Miss. 248; *Pugh* v. *Hold,* 27 Miss. 461, 468; *Trustees* v. *Prentiss,* 29 Miss. 46; *Cheesborough* v. *Milliard,* 1 John. Ch. 2, 412 (7 Am. Dec. 494); *Union Bank of Maryland* v. *Edward,* 1 Gill & J. 363; *First Nat'l Bank* v. *Powell,* 149 S. W. 1096; *Barkwell* v. *Swann,* 69 Miss. 907; *Picard* v. *Shantz,* 70 Miss. 381; *Clopton* v. *Spratt,* 52 Miss. 251; *Chaffee* v. *Telliaferro,* 58 Miss. 544; *Payne* v. *Commercial Bank,* 6 S. & M. 24.

All of the above cases have reference solely and entirely to a surety on the notes. In this case we insist that Mr. Brewer is not a surety, nor is his cousin, Mr. Ed. Brewer, surety; but they are both in equity and in law co-makers and under the decision of *Tarleton* v. *Bank of England,* 23 Miss. 173, and *Goar* v. *McCanless,* 60 Miss. 248, they have absolutely nothing to say with reference to whether or not some of the notes are subordinated to the others in point of security under the trust deed.

The Negotiable Instrument Act, section 2698, Hemingway's Code, provides how an instrument may be discharged so far as parties secondarily liable are concerned, and this is the only way that it can be discharged. The

question of suretyship is abrogated by the Negotiable Instrument Act. *Merchants Nat'l Bank* v. *Smith*, 59 Mont. 280; 196 Pac. 523, 15 A. L. R. 430.

*The fraudulency of the assignment from Mr. Brewer to Messrs. Cutrer & Smith.* Chancellor Osborne, as well as Chancellor Sledge in this cause held that the transfer and assignment to Messrs. Cutrer & Smith was valid. Judge Osborne held that Messrs. Cutrer & Smith were *"bona-fide* purchasers for value without notice."

No case has been produced, or can be produced in any court, which holds that there can be such a thing as *bona-fide* purchasers for value without notice of an undivided interest in a chose in action. Under the common law one could not assign a chose in action and it is only by virtue of section 497, Hemingway's Code, that a chose in action can be transferred and assigned in this state. It provides that in order to give notice of the assignment, it is required by the statute that the assignment should be filed with the papers in the cause. On this point see, 2 R. C. L., Assignments, section 3, page 595; sections 26, 27 and 39, pages 618-19 and 630; *Ford* v. *Sprale*, 2 A. K. Marsh (Ky.) 528, 12 Am. Dec. 439; *Natchez* v. *Minor*, 9 S. & M. 544; *Duke* v. *Clarke*, 58 Miss. 466; *Field* v. *Weit*, 28 Miss. 56; *Scott* v. *Metcalf*, 13 S. & M. 563; *Anderson* v. *Williams*, 24 Miss. 686; 5 C. J., Assignments, section 150, page 962.

While the Canal Bank & Trust Company was the pledgee in possession of the Gates and Bobo notes, Brewer in December, 1923, and January, 1924, attempted to convey his equity in these notes by assignment to his attorneys and his daughter. We say that regardless of any written pledge, or whether or not the renewal notes had been marked "paid," the possession of the Gates and Bobo notes by the Canal Bank was full and complete and actual and constructive notice to the assignees of any claim or right and title that the Canal Bank had to the said Gates and Bobo notes. *Muller* v. *Pondir*, 55 N. Y. 325, 14 A. S. R. 259; Jones on Collateral Securities, sec-

tion 85, page 99; *Buck* v. *Payne,* 52 Miss. 271; *Brown* v. *Smith,* 5 How. (Miss.) 387.

*The fraudulency of the assignment from Mr. Brewer to Mrs. Earline Brewer Shelton.* We call the court's attention to the following points denominated by law writers as being badges of fraud:

(1) Failure to record within a reasonable time. In this connection we call attention to the fact that the assignment from Mr. Brewer to his daughter was dated January 24, 1925, and not recorded until November 10, 1925. The assignment made by Mr. Brewer to his attorneys, Messrs. Cutrer & Smith, was dated December 21, 1923, and not recorded until December 2, 1925. See 12 R. C. L., page 580; *Polk* v. *Polk,* 40 Miss. 516.

(2) The value of the property exceeds the amount of the debt. See 12 R. C. L., page 582; *Kaufman* v. *Whitney,* 50 Miss. 103; *Price* v. *Martin,* 46 Miss. 429. If the difference in value is great, the transaction is entirely void; if a small amount, void for the difference. 12 R. C. L., page 587; *Griswold* v. *Szwanek,* 21 L. R. A. 22 and note; *Rice* v. *Harrison,* 2 Miss. Dec. 403; *Thompson* v. *Hester,* 55 Miss. 656; *Graham* v. *Morgan,* 83 Miss. 601.

(3) Relationship of the parties. The court will closely scrutinize transfers between members of a family. *Kaufman* v. *Whitney,* 50 Miss. 109; 12 R. C. L. 668; *Clark* v. *Ball.*

(4) The burden of proof is usually upon creditors; but upon discrepancy in price shown, or any fraud, the burden shifts to the defendants to show value and purchase without notice of any fraud. *Richards* v. *Vaccaro & Co.,* 67 Miss. 516; *Ott* v. *Smitz,* 68 Miss. 773; *Atkinson* v. *Graves,* 70 Miss. 42. In this connection the fraud need not be active, but the law will impute fraud in certain instances. *Mark* v. *Bradley,* 69 Miss. 1.

By the great weight of authority in a conveyance from husband to wife, the burden of proof is upon the wife to show that the consideration was real and adequate. 12

R. C. L., page 689; *Adoue* v. *Spencer,* 56 L. R. A. 817, and notes, page 824 *et seq.; Virden* v. *Dwyer,* 78 Miss. 763.

*Conclusion.* This cause is not on trial on its merits before the court. The only question presented for this court's decision is whether or not the injunction should be dissolved in Cause No. 26,527, and the complainant is not put to proof finally on the merits, either as to the liability of Mr. Brewer on the Gidden & Townsend and McNally notes, or the alteration thereof, but the sole question is as to whether or not there is enough doubt of this matter for the court to hold the injunctions and preserve the property intact until a final hearing on these merits can be heard.

"The power to dissolve as well as to grant injunctions must rest necessarily in the discretion of the court and should be exercised so as to prevent injustice." *Bowen* v. *Hoskins,* 45 Miss. 188; *Alcorn* v. *Alcorn,* 76 Miss. 906; Griffith on Ch. Pr. in Miss., section 456.

Where on motion to dissolve an injunction the showing is unsatisfactory, the court must retain the injunction until there has been full proof: *Bynum* v. *Meyer,* 48 So. 289; *Coleman* v. *Hudspeth,* 49 Miss. 562; Ann. Cas. 1915B 520; *Citizens Bank of Belzoni* v. *Harpeth Nat'l Bank,* 120 Miss. 505; *McKenzie* v. *McCrory,* 88 Miss. 86; *Evans* v. *Hay,* 101 Miss. 244; *Alcorn* v. *Saddler,* 66 Miss. 221; *Madison County* v. *Paxton,* 56 Miss. 679; Hill on Injunctions, 93; Walker, Chancery, 90; *Coleman* v. *Hudspeth,* 49 Miss. 562, *ibid.*

In both these cases the appellees are fully protected both by bond and by the payment of the case money into court; and if the injunctions are dissolved full damages, we imagine, will be asked for and allowed; and the petitioner desires to take no step without fully indemnifying the parties from any possible loss until final decree can be rendered.

*Green, Green & Potter,* also, for appellants.

I.　*The court erred in dissolving the injunction as to Cutrer & Smith.* Board of Sup'rs v. Paxton, 56 Miss. 679; *Bowen* v. *Hoskins,* 45 Miss. 189; Hill on Injunctions, 108; *Hoagland* v. *Titus,* 1 McCart, 83; Griffith's Miss. Ch. Pr., section 456; *Alcorn* v. *Alcorn,* 76 Miss. 922; *Alcorn* v. *Sadler,* 66 Miss. 221.

II.　*Creditors' Bill.* The bill in its aspect as a creditor's bill to set aside the fraudulent conveyances to Cutrer & Smith and Mrs. Earline Brewer Shelton is based upon section 313, Hemingway's Code. Under this statute the chancellor was correct in holding that the bank could file this bill to set aside these fraudulent conveyances, as a creditor of Earl Brewer.

III.　*The chancellor erred in holding that the assignment to Cutrer & Smith was not fraudulent, that Cutrer & Smith were bona-fide purchasers for value, and that the fee was not exorbitant. Emanuel & Barnett* v. *White,* 34 Miss. 56; *Brown* v. *Freeland,* 34 Miss. 181; *Bank* v. *Auze,* 74 Miss. 622; *Couret* v. *Conner,* 118 Miss. 374, 79 So. 230; *Lienkauf* v. *Harvey,* 93 Miss. 613; 34 C. J. 1010; *Edward F. Gerber* v. *Thompson,* 84 W. Va. 721, 7 A. L. R. 730; 34 C. J. 1012.

The Cutrer & Smith Assignment being a Louisiana contract, to be performed in Louisiana, and governed by Louisiana law, under article 1978 of the Louisiana Code, Brewer being insolvent, is a constructive fraud and void under the laws of Louisiana. *Stone & Co.* v. *Kidder,* 6 La. Ann. 552; *Blank* v. *Martin,* 2 Rov. La. Rep. 38; *Hodge* v. *Morgan* (1824), La. 2 Martin (N. S.) 61; *Johnson* v. *Marx Levy,* 109 La. —, 34 So. 69; 27 C. J. 629, note 26.

The assignment to Mrs. Earline Brewer Shelton, Exhibit "I" to the original bill, was also a Louisiana contract, and fraudulent and void for the same reasons as the Cutrer & Smith assignment.

IV.  *The court erred in holding that the Canal Bank & Trust Company is precluded from asserting any claim to the Bobo and Gates notes by reason of the pledge contained in the renewal notes of one hundred and two hundred and twenty-five thousand dollars, executed in February,* 1922, *and due in November,* 1922.  34 C. J. 811, 932; *Richmond* v. *Boone,* 86 So. (Miss.) 290; *Hardy* v. *O'Pry,* 102 Miss. 197.  See, also, to the same effect, *Hart* v. *Picard,* 75 Miss. 651; *Hamilton* v. *State,* 67 Miss. 217; 34 C. J. 847, 941, 943; *Perry* v. *Lewis,* 49 Miss. 443; 34 C. J. 858, 863; 2 Black on Judgments, section 767; *Keokuk & Western R. R. Co.* v. *State of Missouri,* 152 U. S. 301, 38 L. Ed. 450; *United Shoe Mac. Co.* v. *U. S.,* 258 U. S. 456, 466 L. Ed. 717; 15 R. C. L., page 950; 34 C. J. 804, citing *Union Central L. Ins. Co.* v. *Drake,* 214 Fed. 536, C. C. A. 82.

*Roberson, Yerger & Cook,* for appellees.

I.  *The plea to the jurisdiction of Chancellor Sledge as interposed by the Canal Bank was properly overruled.* It is our contention, and the law is well settled in Mississippi, that a special judge has no vacation authority or jurisdiction.  *Kelly* v. *State,* 79 Miss. 168.  Section 718, Hemingway's Code is in point.  See, also, *Adams* v. *Kyser,* 61 Miss. 407; *Martin* v. *O'Brien,* 34 Miss. 21; *Grinstead* v. *Buckley,* 32 Miss. 148.

From the statutes and the foregoing decisions the following appear to be propositions well settled:

(1)  That if the regular chancellor is disqualified, a member of the bar may be agreed upon to try the cause or may be commissioned by the Governor, but the decision of this member of the bar must be approved and given judicial force by the signature of the regular judge, who alone is clothed with judicial authority under the constitution;

(2)  That a special judge thus agreed upon or appointed has no vacation powers and any decision by him in vacation is *coram non judice;*

(3)    That the defendant in an injunction suit has the undoubted statutory right to move for a dissolution of the injunction on five days' notice;

(4)    That section 718, Hemingway's Code, authorizes the chancellor from an adjoining district to hear any matter in which the regular judge is disqualified either in vacation or term time;

(5)    That Chancellor McGehee being disqualified properly requested Chancellor Sledge to hear this matter in vacation and that Chancellor Sledge complied with the request and gave to appellees their right to a hearing at the court house in Clarksdale, where the case was pending, the only place where the cause could be lawfully tried.

II.    *The subordination of the notes sued on discharged Brewer as endorser. Davidson* v. *Allen,* 36 Miss. 419; *Cage* v. *Iler,* 5 S. & M. 410, 43 Am. Dec. 521; *Terry* v. *Woods,* 6 S. & M. 139, 45 Am. Dec. 274; *Pugh* v. *Holt,* 27 Miss. 461; *Wooten* v. *Buchanan,* 49 Miss. 386; *Green* v. *Morris,* 78 So. 550; *Interstate Trust & Banking Co.* v. *Young,* 65 So. 612; *Sawyer State Bank* v. *Sutherland,* 36 N. Dak. 493, 162 N. W. 696; *Runnels* v. *James,* 115 Miss. 607; *Bridges* v. *Winters,* 42 Miss. 135; *Brown* v. *Prophit,* 53 Miss. 649; *Key* v. *Cross,* 23 Miss. 598; *Bank of Lauderdale* v. *Cole,* 111 Miss. 39. *Bank of England* v. *Tarleton,* 23 Miss. 173, is not in point. *Goar* v. *Mc-Candless,* 60 Miss. 244, is favorable to us.

III.    *The judgment and all proceeds thereof as rendered against the Canal Bank in Cause No.* 25200 *had been assigned for a good and valuable consideration long prior to the institution of the present suit. Schoolfield* v. *Hirsh,* 71 Miss. 55.

IV.    *There was no error committed by the court below with reference to the deposition of H. A. Fagin.* A change in the state of facts has no bearing upon a pending

appeal. Where an appeal is taken from a judgment of an inferior court, the appellate court in considering its correctness will confine itself to the state of the case at the time it was rendered and will not look to anything subsequent thereto appearing in the record. *Johnston* v. *George* (1854), 6 Md. 452; *Boone* v. *McJunkin* (1886), 63 Miss. 559; *White* v. *Buloid* (1830), 2 Paige 164 (N. Y.); *Appeal of Martin* (1854), 23 Pa. St. (1 Harris) 453. See, also, *The Vaughan*, 81 U. S. (14 Wall.) 258, 20 L. Ed. 807.

This court cannot reverse the judgment of an inferior court for any fact arising after the rendition of such judgment. *Hemphill* v. *Smith*, Miss. Supreme Court (Division)—April 17, 1922, 128 Miss. 586, 91 So. 337, 24 A. L. R. 1456; *Vandiver* v. *American Can Co.*, 67 So. 299, headnote 3; *Yarborough* v. *Swift & Co.*, 44 So. 121, 119 La. 244.

A cause will not be remanded to enable a party to introduce evidence of which he declined to avail himself at the trial. *Schlater* v. *LeBlanc*, 48 So. 921, 121 La. 919.

A preliminary injunction must stand or fall on appeal on the merits it possessed when it was granted. *New Boston Coal & Mining Co.*, 54 Pa. (4 P. F. Smith) 164.

*Wells, Stevens & Jones, Cutrer & Smith, P. H. Lowrey* and *Lowrey & Lamb*, also, for appellees.

I. All matters and things raised in this cause are *res judicata* under the rules of the court in cause number 25200. See *Canal Bank* v. *Earl Brewer*, 108 So. 430; *Martin* v. *Evans*, 85 Md. 79, 36 L. R. A. 218; *Durant* v. *Essex Co.*, 74 U. S., 19 Law Ed. 154; *Walton* v. *Bodley*, 39 U. S. 156, 10 Law Ed. 398; *Hughes* v. *U. S.*, 18 Law Ed. 305; *Bigelow* v. *Winsor*, 1 Gray, 301; *Foote* v. *Gibbs*, 1 Gray, 412; *Lyon* v. *Perin & Gee Mfg. Co.*, 105 U. S. 698, 31 Law Ed. 839; *Y. & M. V. Ry. Co.* v. *Adams*, 77 Miss. 266, 28 Miss. 123, 128, 226, 433, 15 Law Ed. U. S. 395; 35 Fed. 811, 814; 116 Miss. 550; 4 L. R. A. 565; 28 Fed.

46; 4 L. R. A. Digest, sections 3847-3848-3849.; L. R. A. 1917-C 418; *Dean* v. *Board of Supervisors,* 135 Miss. 268; *Lofton* v. *Shotwell,* 27 Miss. 630; *Cromwell* v. *County of Sac,* 94 U. S. 357; *Bates* v. *Strickland,* 139 Miss. 636; *Starling* v. *Sorrell,* 134 Miss. 782; *Duncan* v. *McNeil,* 31 Miss. 704; *Henderson* v. *Winchester,* 31 Miss. 290; *Cannon* v. *Cooper,* 39 Miss. 784; *Slater* v. *Ekirling,* 66 Am. St. Rep. 444-448; *Lamb* v. *Wahlenmaier,* 103 A. S. R. 66; Freeman on Judgments, sec. 282; Black on Judgments, sec. 761; Taylor on Evidence (9 Ed.), sec. 1699; *Timmons* v. *Dunn,* 4 Ohio State, 680; *Howell* v. *Goodrich,* 69 Ill. 536; *Litch* v. *Clinch,* 136 Ill. 410, 26 N. E. 579; *Mc-Nicholas* v. *Lake,* 13 Col. App. 164, 56 Pac. 987; *Ehle* v. *Bingham,* 7 Barb. 494; *Baker* v. *Stinchfield,* 57 Me. 363; *S. & N. R. R. Co.* v. *Heinlein,* 56 Ala. 368; *Jennison* v. *West Springfield,* 13 Gray, 544; *Case Mfg. Co.* v. *Moore,* 144 N. C. 527; 119 Am. St. Rep. 933; *Tuttle* v. *Harrell,* 85 N. C. 456; *Piedmont Wagon Co.* v. *Byrd,* 119 N. C. 460; *Dimock* v. *Revere Copper Co.,* 117 U. S. 559; *Tyler* v. *Caphart,* 125 N. C. 64; *Dobson* v. *Pierce,* 112 N. Y. 156; *Sweet* v. *Brockley,* 53 Me. 346.; *Wernse* v. *McPike,* 100 Mo. 476; *Weeks* v. *Harriman,* 65 N. H. 91; *Breichlin* v. *Night Hawk Mining Co.,* 49 Wash. 198, reported in 122 Am. St. Rep. 863; 24 Am. Eng. Enc. of Law (2 Ed.), 799; 23 Cyc., 1232; *Plant* v. *Carpenter,* 19 Wash. 621; *Gould* v. *Evansville R. R. Co.,* 91 U. S. 526; *N. P. R. R. Co.* v. *Slaght,* 205 U. S. 122; *Cain* v. *U. C. Life Ins. Co.,* 123 Ky. 59, 124 Am. St. Rep. 313; Cooley on Constitutional Limitations (5 Ed.), 58; *Henley* v. *Holt,* 59 Conn. 102, 21 Am. St. Rep. 71-74; *Equitable Trust Co.* v. *Smith,* 77 Fed. 677 (see specially).

II.  It was improper to file this bill, issue the injunction, and hear and grant a decree while cause number 113 was pending, wherein the injunction prayed for was for the same identical property, against the same defendants, and said bill was then pending in the United States district court, a court of concurrent jurisdiction, being a

litigation over the same property between the same parties. See *Griffith* v. *Water Works*, 88 Miss. 371, and authorities cited; *Farmers Loan & Trust Co.* v. *Lake St. Elevated R. R. Co.*, 44 Law Ed. 667-671; *Peck* v. *Genness*, 7 How. 612, 12 Law Ed. 841; *Freeman* v. *Howe*, 24 How. 450, 16 Law Ed. 749; *Moran* v. *Sturgis*, 154 U. S. 256, 38 Law Ed. 981; *Central Nat. Bank* v. *Stephens*, 169 U. S. 432, 42 Law Ed. 807; *Harkrader* v. *Wadley*, 172 U. S. 148, 43 Law Ed. 399; page 2312, vol. 1-2 U. S. Digest; Sections 1534, 1536, 1541, 1543; Page 2315, section 1550; Page 2318, section 1573; Page 2319, section 1577, 1575; 130 Fed. Rep. 806.

III. It was error to file this bill, grant the injunction, hear this cause, and render a decree therein, while this cause was pending in the United States district court in bankruptcy, a court of exclusive jurisdiction. *McCrory* v. *Donald, Trustee*, 80 So. 643; *Allen* v. *Montgomery*, 48 Miss. 101; *Acme Harvester Co.* v. *Beekman Lumber Co.*, 56 Law Ed. (U. S.) 208-213-214; *Everett* v. *Judson*, 57 Law Ed. 927, 929; *Bailey* v. *Baker Ice Co.*, 60 Law Ed. 275; *Fairbanks Steam Shovel Co.* v. *Wills*, 60 Law Ed. 841; *Pekin Plow Co.*, 112 Fed. 308, 310; *Chatfield* v. *O'Dwyer*, 42 Cir. Court of App. 40, 101 Fed. 797; 1 Collier on Bankruptcy (13 Ed., 1923), page 657, sub-section "G," page 658; *Matthews & Son* v. *Webre Co.*, 213 Fed. 396, 15 C. J. 1161, section 637.

IV. The Gidden & Townsend and McNally notes sued upon herein had been materially altered and changed, and a party secondarily liable thereon released. Hemingway's Code, section 2703; *Bay* v. *Schrader*, 50 Miss. 326; *Kay* v. *Cross*, 23 Miss. 598; *Effinger* v. *Richards*, 35 Miss. 540; 1 R. C. L. 799, 977, sec. 15. Extended note in 86 Am. St. Rep. 115; *Kurth* v. *Farmers & Merchants State Bank*, 127 Am. St. Rep. 428; Extended note in 86 Am. St. Rep. 101; *Anderson* v. *Sims*, 33 Ark. 771; *Davis* v. *Eppler*, 38 Kans. 629, 16 Pac. 793; *Farmer* v. *Rand*,

14 Me. 225; 16 Me. 453; *Schwartz* v. *Wilmer,* 9 Md. 136; *Jordan* v. *Long,* 109 Ala. 414, 19 So. 843, 1 R. C. L. 979, section 13, 1 R. C. L. 967, section 4 (see special).; *Sanders* v. *Bagwell,* 7 L. R. A. 743; Hemingway's Code, sec. 2641; *Skinner* v. *Mahoney,* 140 Miss. 625; *Bank of Lauderdale* v. *Cole,* 111 Miss. 39, 21 R. C. L. 1004, section 53; *Interstate Trust & Banking Co.* v. *Young,* 65 So. 611 and authorities cited; *Martin* v. *Thomas,* 16 Law Ed. (U. S.) 689; *Miller* v. *Stewart,* 9 Wheat. 702; *Glenn County* v. *Jones,* 2 Ann. Cas. 764; *Reeve* v. *U. S.,* 19 Law Ed. 541; *Schister* v. *Weiss,* 19 L. R. A. 182; *People* v. *Wills,* 93 Am. Dec. 521; 1 Joyce on Defense to Commercial Paper, 751; 95 N. W. 61-63; Hemingway's Code, sec. 283.

V.    Appellant pleaded in its sworn bill that the judgment rendered on its cross-bill in cause number 25200 that the court was clothed with full jurisdiction of the subject-matter and the parties to decide that cause.    Defendant answered admitting this.    The jurisdiction of the court was settled thereby.    *Parkhurst* v. *McGraw,* 24 Miss. 134; *Cornwall* v. *Davis,* 4 L. R. A. 563; *Henderson* v. *Staniford,* 105 Mass. 504; *Hughes* v. *Dundee Mortgage Trust Investment Co.,* 28 Fed. 40; *Ohio & M. R. R. Co.* v. *McConley,* 96 U. S. 267; 24 Law Ed. 695 .

VI.    The record shows that the Canal Bank did not come into court with clean hands in this case.    The doors of the court closed against it.    Griffith's Chancery Practice, page 45; 4 A. L. R. 44, and note; *Deweese* v. *Reinhart,* 165 U. S. 386, 44 Law Ed. 757; *Dean* v. *Elyton Land Co.,* 113 Ala. 275, 21 So. 213; *East* v. *Pace,* 57 Ala. 521; *Tarrison* v. *McCray,* 37 Ala. 687.; *Mullens* v. *Taylor,* 132 Miss. 551, 4 A. L. R., pages 1 to 107; for full discussion see pages 70 to 79.

VII.    A pledgee occupies a confidential and fiduciary relation.    *Boswell* v. *Thigpen,* 75 Miss. 308; *McLemore* v. *Hawkins,* 46 Miss. 715; *Dibert* v. *D'Arcy,* 248 Mo. 617;

*Breiton* v. *Ferran,* 63 N. E. 954; *Morris* v. *Windsor Trust Co.,* 105 N. E. 75; 39 Cyc. 226, 598, 599, 600.

VIII. A pledgee, when sued by the pledgor for the return of the trust property and decree rendered against him for the property, is in default and a wrongdoer. *McLemore* v. *Hawkins,* 46 Miss. 715-719; *Boswell* v. *Thigpen,* 75 Miss. 308; *Hagen* v. *Bank,* 182 Mo. 319; *Laclede National Bank* v. *Richardson,* 186 Mo. 279; *Boardman* v. *Florez,* 37 Mo. 559; *Bank* v. *Kilpatrick,* 204 Mo. —; 39 Cyc., secs. 226, 598, 600; *Dodge* v. *Lawson,* 19 N. Y. Supp. 904; *Nichols* v. *Burnah,* 21 W. N. C. 153; *Stephenson* v. *Burdett,* 10 L. R. A. 576; *Morris* v. *Winsor Trust Co.,* 105 N. E. 75; *Breiton* v. *Ferrin,* 63 N. E. 954 (special); 22 Am. Eng. Enc. Law, 869; *Myers* v. *Merchants Nat. Bank,* 27 Ann. Cas. 266; 28 Am. & Eng. Enc. Law, 1016; 25 Am. & Eng. Enc. Law, 533; *Tagg* v. *Bowman,* 99 Pa. 376; *Peters* v. *Nashville Savings Bank,* 86 Tenn. 224; *Detroit First National Bank* v. *Barman Wire Works,* 58 Mich. 124; *Cook County Nat. Bank* v. *U. S.,* 27 Law Ed. 537; *Knowles* v. *Goodrich,* 60 Ill. App. 505; *Henderson* v. *O'Connor,* 13 L. R. A. 490; *Joor* v. *Williams,* 38 Miss. 546; Story's Equity Juris., sec. 322, page 261; *Pressley* v. *Ellis,* 48 Miss. 580; *Gillenwaters* v. *Miller,* 49 Miss. 166; *Gilly* v. *Roumieu,* 11 La. Ann. 747; *Young* v. *Jackson,* 37 La. Ann. 810; Art. 2956, page 901 of the Revised Civil Code of La.

IX. It was error to grant this injunction without notice. Griffith's Chancery Practice, section 445, and authorities therein cited.

Argued orally by *Gerald FitzGerald, Marcellus Green,* and *H. F. Jones,* for appellants, and *P. H. Lowrey, J. M. Stevens* and *V. B. Montgomery,* for appellees.

SMITH, C. J., delivered the opinion of the court.

Both of these cases are appeals from decrees dissolving preliminary injunctions granted in the same case;

both were argued together before the court in banc, and will be here so disposed of. The suit was begun by a creditors' bill filed for the purpose of setting aside two alleged fraudulent assignments by Brewer, who is insolvent, of several promissory notes, and for the purpose of subjecting the proceeds of these notes to the payment of any decree that might be rendered against Brewer on the claims of his creditors joining in the suit. The bill was filed by the Canal Bank & Trust Company, and one other of Brewer's creditors afterwards joined therein. This creditor has not joined in, and is not a party to, the appeal in case No. 26344.

The suit by the bank is on six promissory notes, one, executed by Frank McNally to the Richardson & May Land & Planting Company, Limited, for forty thousand five hundred dollars, and five; executed by J. E. Townsend and W. B. Gidden to the Richardson & May Land & Planting Company, for thirty-nine thousand one hundred eighty dollars each, all of which bear the indorsement of the "Richardson & May Land & Planting Company, by Earl Brewer, President," and also the personal indorsement of Earl Brewer. All of these notes were pledged to the bank by W. P. Holland, into whose hands they had come in due course as security for a debt of five hundred thousand dollars, which he owed, and a large part of which he still owes, the bank. The promissory notes, which the bill alleges were fraudulently assigned by Brewer, consist of six notes executed by C. G. and B. K. Bobo, each for thirty-two thousand two hundred dollars, aggregating one hundred ninety-three thousand two hundred dollars, and eight notes, executed by W. L. Gates, each for eight thousand six hundred dollars, aggregating sixty-eight thousand eight hundred dollars. A half interest in these notes was assigned by Brewer to Cutrer & Smith, a firm of lawyers composed of J. W. Cutrer and E. W. Smith, and the other half interest therein was assigned by Brewer to his daughter, Mrs. Earline Brewer Shelton.

Brewer was indebted to the bank for money borrowed, and the Gates and Bobo notes were pledged to the bank by him as security therefor. Brewer paid this debt, but the bank declined to surrender the Gates and Bobo notes. For some reason, not clearly disclosed, the Canal Bank & Trust Company forwarded the Gates and Bobo notes to a bank at Clarksdale, Miss., and while they were in the possession of the Clarksdale Bank, Brewer sued that bank and the Canal Bank & Trust Company for the possession of the notes, and for a judgment against the Canal Bank & Trust Company for money it had collected on the notes. The Canal Bank & Trust Company, in its answer, claimed the right to hold the notes under a pledge which Brewer had made to it thereof as a security for the debt due it by Holland, and under two or more pledges Brewer had made to it of the notes as security for his indorsement on the Gidden-Townsend and McNally notes, and by a cross-bill alleged that Brewer was president of the Richardson & May Land & Planting Company, Limited; that he had appropriated and dissipated the assets thereof, among which were the proceeds of the Gidden-Townsend and McNally notes, for which he was liable to account to the Richardson & May Land & Planting Company, to whose right the Canal Bank & Trust Company should be subrogated, and prayed for such an accounting. Gidden and Townsend and McNally were not parties to the suit, and no decree was sought against Brewer on his indorsement of their notes, the ones here sued on. In the cross-bill, reference was made by the bank to the fact that they were not parties to the suit, and could not be made parties thereto by means of a cross-bill. This suit resulted in a decree for Brewer adjudging the contract by which he pledged the Gates and Bobo notes as security for Holland's debt to the bank, void; that Brewer had not pledged the notes to the bank as security for his indorsement on the Gidden-Townsend and McNally notes; that he was not liable for an acounting to the bank for any misappropriation or dissipation of the assets belonging to the

Richardson & May Land & Planting Company; that the Gates and Bobo notes be delivered to him; and that the Canal Bank & Trust Company pay him fifty-one thousand nine hundred sixty dollars, money adjudged to have been collected by it on the notes. This decree was affirmed on appeal to this court in the case of the *Canal Bank & Trust Co.* v. *Brewer,* 143 Miss. 146, 108 So. 424, 47 A. L. R. 45, to which reference is here made for a more complete statement of the facts therein.

Brewer was represented in that litigation by Cutrer & Smith, and he assigned to them a half interest in the Gates and Bobo notes and any money that he might recover from the Canal Bank & Trust Company, the consideration recited therein being legal services to be rendered by Cutrer & Smith in recovering possession of the notes and obtaining judgment against the bank for the money collected by it on the notes. This assignment was dated prior to the institution of the suit therein contemplated, but was not disclosed until after the termination of the case in the trial court. It was filed for record and thereby made public while that case was pending on appeal in the supreme court. While that case was in the supreme court, Brewer also assigned, in writing, a half interest in the Gates and Bobo notes to his daughter, Mrs. Earline Brewer Shelton, the recited consideration therefor being the cancellation of a debt due by Brewer to Mrs. Shelton of fifteen thousand dollars, and the assumption by Mrs. Shelton of a debt due by Brewer to his wife, amounting to thirty-three thousand four hundred three dollars and forty-three cents. This assignment was recorded a few days after the assignment to Cutrer & Smith was recorded.

On the affirmance of that case by the supreme court, the Gates and Bobo notes, which were then in the hands of a receiver, who had been directed to hold and dispose of them as the court might decree, were delivered to Cutrer & Smith and Mrs. Shelton by the receiver. The case was carried to the supreme court of the United States

by writ of error; and, failing to obtain an order from this court directing the receiver to hold the notes pending the decision of the case by the supreme court of the United States, the Canal Bank & Trust Company filed a bill in the Federal district court setting up the litigation then pending with reference to the Gates and Bobo notes, the appeal of the case to the supreme court of the United States, and prayed for an injunction against all of the necessary parties restraining them from disposing of the notes until the case could be decided by the supreme court of the United States. No restraining order was issued on this bill, and the injunction, on the hearing of the application therefor, was denied. The Canal Bank & Trust Company then filed the bill here under consideration, and afterwards the Federal court dismissed the bill for the injunction pending therein.

Prior to the institution of the present suit, the Canal Bank & Trust Company and other of Brewer's creditors filed a petition in the Federal court, praying that Brewer be adjudged a bankrupt and his property be disposed of accordingly. The bill of complaint here involved was filed while the bankruptcy petition was pending and before any adjudication thereon had been made. What disposition was finally made thereof by the Federal court does not here appear.

The five Gidden-Townsend notes are the last maturing notes of a series of ten that were executed by Gidden and Townsend to the Richardson & May Land & Planting Company, and were secured by a deed of trust on land. The McNally note sued on is one of a series of ten notes executed by McNally to the Richardson & May Land & Planting Company, and is secured by a deed of trust on land. Neither of these deeds of trust contain any stipulation giving any of the notes secured thereby priority over the others in the application thereto of the proceeds of the land in the event the deeds of trust should be foreclosed. The notes were indorsed by the Richardson & May Land & Planting Company of which Brewer was

president, and by Brewer personally, and delivered to the Planters' Bank of Clarksdale, Miss., for a valuable consideration. Afterwards Holland, president of the Planters' Bank, borrowed on his personal note four hundred thousand dollars from the Missouri State Life Insurance Company for the use of the Planters' Bank, and pledged as security therefor all of the Gidden-Townsend and McNally notes. Holland requested the Missouri State Life Insurance Company to permit him to withdraw the five last maturing Gidden-Townsend notes and the four last maturing McNally notes. The Missouri State Life Insurance Company permitted him to do this, and returned to him the last five maturing Gidden-Townsend notes and the four last maturing McNally notes on his and the bank's agreement that in the event the deeds of trust should be foreclosed, the notes retained by the Missouri State Life Insurance Company should be first paid. This agreement was evidenced by a written contract, and also by a notation on the back of the notes withdrawn by Holland. The notation on the back of the McNally note here sued on reads as follows:

"This is one of a series of ten (10) notes secured by a deed of trust and this assignment is made on condition that the lien of this note shall be junior and subject to the lien of the six (6) notes maturing first as described in said deed of trust, and in case of foreclosure the six (6) notes maturing first shall be paid in full before any of the proceeds of sale shall be applied to the payment of this note."

The notation on the back of the Gidden-Townsend notes is in the same language except that it refers to five instead of six last maturing notes. Brewer claims, and we shall assume, that he was not informed of this agreement.

One of Brewer's contentions in the former case was that he was released from liability as indorser on these notes by virtue of this subordination agreement by Holland and the Planters' Bank with the insurance company

but the court, in its decree, expressly adjudicated that he had not been released thereby.

The chancellor for the district in which the present suit is pending is disqualified from acting therein, and so certified to the Governor. Counsel representing all parties entered into a written agreement that Hon. Sam I. Osborn, a member of the bar of Leflore county, Miss., should try the case as special chancellor, and he was also, at their request, appointed by the Governor as such. A preliminary injunction was granted restraining Cutrer & Smith and Mrs. Earline Brewer Shelton from disposing of the Gates and Bobo notes until the case should be finally heard; and a motion for its dissolution was filed by the appellees and heard by Chancellor Osborn, who dissolved the injunction as to Cutrer & Smith, but retained it as to Mrs. Earline Brewer Shelton. From that decree, the case was brought to this court on direct appeal by the Canal Bank & Trust Company, and on a cross-appeal by the appellees.

The following three contentions of the appellees are without merit:

First. The decree rendered by the chancery court in the case of *Earl Brewer* v. *Canal-Commercial Trust & Savings Bank (now the Canal Bank & Trust Company* v. *Earl Brewer)*, No. 3388 on the docket thereof, affirmed on appeal to this court, dismissing the bank's cross-bill, adjudicates that Brewer was not liable to the Canal Bank & Trust Company on his indorsement of the Gidden-Townsend and McNally notes. Brewer's liability on these notes was not, and could not have been, presented for decision in that case.

Second. That the bill of complaint herein should be dismissed for the reason that it was filed while the suit in the Federal district court, hereinbefore referred to, for an injunction restraining Cutrer & Smith and Mrs. Earline Brewer Shelton from disposing of the Gates and Bobo notes until the supreme court of the United States should decide the case, was pending.

Third.   That the bill should be dismissed for the reason that it was filed while the bankruptcy proceedings against Brewer was pending.   7 C. J. 349; 1 Remington on Bankruptcy (3 Ed.), section 463.   Whether the court below·could render a final decree herein before the Federal court has disposed of the bankruptcy proceeding is not here involved, in which connection see *Orgill Bros.* v. *Coleman,* 146 Miss. 217, 111 So. 291.

In the former case, the claim of the Canal Bank & Trust Company to a lien on the Gates and Bobo notes by reason of a pledge, or pledges thereof made by Brewer to the bank as security for any indebtedness due by him or any one else to the bank, was presented for decision, decided adversely to the bank, and is therefore *res judicata.*   The bank's right in the case now at bar is that only of an unsecured creditor.

Brewer was not released from his liability as indorser on the Gidden-Townsend and McNally notes because of the agreement by Holland and the Planters' Bank that, in the event the mortgages securing the notes should be foreclosed, the proceeds thereof should be first applied to the payment of those of the notes held by the Missouri State Life Insurance Company.   The appellees' contention is that this agreement is, in effect, a fraudulent alteration of the notes.   The notes were in no way altered by this agreement.   It deals with and affects only the application to the notes of the proceeds of the mortgages by which they are secured.   In other words, the agreement is one affecting collateral security, and is not embraced within the provisions of section 120 of the Negotiable Instruments Law; chapter 244, Laws of 1916; section 2698, Hemingway's Code; Brannon's Negotiable Instruments Laws (4 Ed.), p. 763, but is controlled by section 196 thereof (section 2774, Hemingway's Code), which reads as follows:

"In any case not provided for in this act the rules of law and equity including the law merchant shall govern."

When this agreement, with reference to the application of the proceeds of the deeds of trust securing the notes, was made, all of the notes were held by the Planters' Bank; and it had the right in assigning some of them to agree that the assignee should be paid first out of the proceeds of the deeds of trust. 41 C. J. 508; *Bank of England* v. *Tarleton,* 23 Miss. 173; *Pugh* v. *Holt,* 27 Miss. 462; *Trustees of Jefferson College* v. *Prentiss,* 29 Miss. 46; *Goar* v. *McCandless,* 60 Miss. 244. The only right of Brewer in this action is that if the manner in which the security for the notes here dealt with impaired the value of that security, or operated to his injury, he would be released from liability as an indorser on the notes to the extent that he has been injured thereby. *Payne* v. *Commercial Bank of Natchez,* 6 Smedes & M. 24; *Clopton* v. *Spratt,* 52 Miss. 251; *Barkwell* v. *Swan,* 69 Miss. 907, 13 So. 809; *Picard* v. *Shantz,* 70 Miss. 381, 12 So. 544; 8 C. J. 621; 3 R. C. L. 1279. No injury is shown to have resulted to Brewer because of the agreement made by Holland and the Planters' Bank with the Missouri State Life Insurance Company. He must show, not probable, but actual, injury therefrom, and we cannot indulge in any speculation as to what might happen.

The bank claims that this question was decided adversely to Brewer in the former litigation, and also that he is estopped from claiming any release from liability because of this agreement, for the reason that when the bank made him one of the loans under consideration in the former litigation, he agreed, before the bank would make the loan, that he would not claim to have been so released. It will not be necessary for us to express any opinion on either of these contentions.

Without setting forth the evidence as to the validity *vel non* of the assignment of the Gates and Bobo notes by Brewer to Mrs. Shelton, and to Cutrer & Smith, it will be sufficient to say that the court below committed no error in retaining the injunction against Mrs. Shelton until the case should be tried on its merits. Judges Mc-

GOWEN, ETHRIDGE, and HOLDEN are also of the opinion that no error was committed in dissolving the injunction against Cutrer & Smith; but Judge ANDERSON, COOK, and SMITH are of the opinion that this injunction should have been retained until the case is tried on its merits, not meaning to say thereby that when the case is tried on its merits the injunction should in no event be dissolved, but merely that it does not sufficiently appear from the evidence now presented that this assignment will be finally held to be valid.

While case No. 26527 was being heard, a motion was made and overruled to continue the hearing for a sufficient length of time to enable the appellants to take the deposition of a witness, who, they had just discovered, would testify to facts which they claimed would demonstrate the assignments of Brewer to Mrs. Shelton and to Cutrer & Smith to be fraudulent. The existence of this evidence was unknown to the appellants when case No. 26344 was tried in the court below; and they have filed a motion in this court requesting that the case be remanded, without a decision, for the hearing by the chancellor of this newly-discovered evidence. We have no statute or precedent authorizing the remanding of a cause to the court below for the hearing of evidence discovered after the judgment or decree appealed from is rendered. So to do would inject into the procedure of this court a new and novel, though probably commendable, element; but we are of the opinion that as the law now is the motion cannot be sustained, and, consequently, it will be overruled.

Coming now to case No. 26527: After case No. 26344 was appealed to this court, the complainants filed a supplemental bill in the court below, setting forth that executions and garnishments were being issued on the decree rendered in the first litigation between the bank and Brewer, which decree was also included in the assignments of Brewer to Mrs. Shelton and Cutrer & Smith, and prayed that it be permitted to pay the money ad-

judged to Brewer by that decree into court, and that a receiver be appointed to receive and hold the money pending the termination of the present litigation; that injunctions be issued restraining further attempts to collect the money adjudged to Brewer by that decree; and for certain other relief not here necessary to be set forth. A receiver was appointed in accordance with the prayer of this supplemental bill, and the money adjudged to be due Brewer by the court was paid over to him by the bank. A motion was made to dissolve this injunction, to discharge the receiver, and to direct him to pay the money in his hands over to Brewer, or Brewer's assignees. This motion was not presented to Osborn, the special chancellor appointed and agreed on for the trial of the case, but was presented to Chancellor Sledge of the Third district, accompanied by a certification from the chancellor of the Seventh district, in which the case was pending, of his disqualification to try the cause, and requesting Chancellor Sledge to act therein in his stead. Chancellor Sledge went to Clarksdale, in the Seventh district, and heard and decided the motion in vacation. When the motion was called for trial, the appellants filed a written objection to its being heard by Chancellor Sledge. This objection was based on two grounds: First, that Sledge was without power to hear and determine the motion outside of the district for which he had been elected; and, second, that the motion should be heard by Osborn because of his appointment by the Governor and the agreement relative thereto entered into by the parties to the litigation. This motion was overruled; and after the evidence was heard, the injunctions granted on the supplemental bill were dissolved, and the receiver discharged and directed to pay the money held by him to Brewer's assignees.

The objection to the jurisdiction of Chancellor Sledge should have been sustained. Section 165 of the Constitution recognizes the right of attorneys engaged in a case in which the regular judge or chancellor is disqualified

to agree "upon a member of the bar to preside in his place;" and section 996, Code of 1906 (Hemingway's Code, section 716), expressly provides that such attorneys may so agree. These sections of the statute and the Constitution also provide for the appointment by the Governor of a special judge or chancellor to try a case in which the regular judge or chancellor is disqualified when the attorneys in the case fail to agree on a member of the bar to try it.

The appellees' contention in this connection is: That a member of the bar selected by agreement of counsel and appointed by the Governor to try a case in which the regular judge or chancellor is disqualified is vested thereby with no power to act in the case in vacation, but only with power so to do in term time; and that matters that arise in vacation in a case in which the regular judge or chancellor is disqualified must be presented to and acted on by a judge or chancellor of another district, under section 998, Code of 1906 (Hemingway's Code, section 718). The case relied on by them is *Kelly* v. *State,* 79 Miss, 168, 30 So. 49. That was a case in the circuit court wherein a special judge, appointed by the Governor because of disqualification of the regular judge, heard and disposed of a case in vacation, the character of the case being such that could have been heard and determined in vacation by the regular judge. The court, with some hesitation, held that a special judge could act only in term time, and that questions arising in a case in vacation should be submitted to and determined by the regular judge of another district under section 922, Code of 1892, the same statute now numbered section 998, Code of 1906 (Hemingway's Code, section 718). In that case there appears to have been no agreement of counsel relative to the matter. The recognition of section 165 of the right of attorneys engaged in a case to agree that it shall be tried by a member of the bar seems to recognize the right of a member of the bar so agreed upon to try and dispose of all questions that might arise in the case whether in

term time or in vacation, and section 996, Code of 1906, (Hemingway's Code, section 716), should not, unless it expressly so provides, be construed to narrow that right. In most cases where a preliminary injunction has been issued, the necessity for passing on a motion to dissolve arises in vacation, the decision of which frequently practically brings the case to an end, and no good reason appears why the legislature should have intended to prohibit an agreement by the attorneys in the case that such motion should be acted on by a special chancellor in vacation. Moreover, section 506, Code of 1906 (Hemingway's Code, section 262), expressly provides that a chancellor may, with the consent of the parties or their solicitors, "try causes and deliver opinions and make and sign decrees therein in vacation." This statute is not limited to regular chancellors, and we see no reason for so limiting it by a strained construction thereof.

The agreement entered into with reference to the trial of the case by Chancellor Osborn covered every phase of it, and expressly stipulates that he should try and dispose of all matters arising therein either in term time or in vacation. The regular chancellor of the district had already certified his disqualification in the case, and there was no occasion for his again certifying such disqualification to Chancellor Sledge and requesting him to try the motion to dissolve the injunction. This certification and request added nothing to Chancellor Sledge's right to try the case, for section 998, Code of 1906 (Hemingway's Code, section 718), has no application, as there was a special chancellor who, under the agreement of the attorneys, was invested with full power to hear and dispose of the motion to dissolve the injunction. The chancellor being without jurisdiction to hear the motion for the reason just set forth, it will not be necessary for us to determine the effect on his decree of his having heard the case outside of his district. Questions discussed by counsel, and not specifically referred to in this opinion, are not decided.

147 Miss.—58.

The decree rendered by Chancellor Osborn in case No. 26344 will be affirmed, and the decree rendered by Chancellor Sledge in case No. 26527 will be reversed, and the case in both appeals will be remanded.

*Affirmed in case No. 26344, and reversed in case No. 26527.*

## Separate Opinion.

Ethridge, J.

In reference to the powers of Judge Sledge, I desire to say that I think Judge Osborn, under the agreement and appointment by the Governor, had the power to determine all issues involved in the suit both in vacation and term time, under section 165 of the Constitution, which reads as follows:

"No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties. Whenever any judge of the supreme court or the judge or chancellor of any district in this state shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the Governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified."

It will be seen from this section of the Constitution that the regular judge in the cases therein provided for is disqualified to act judicially at all, and that the Constitution was providing a constitutional scheme for the appointment of judges in case of disqualification, and vesting such appointees with all the powers of the regular judge as fully and completely as such regular judge could exercise said powers if no such disqualification existed.

In *Kelly* v. *State,* 79 Miss. 168, 30 So. 49, the court did not refer to section 165 of the Constitution at all, but what was said with reference to special judges was said upon a construction of section 922 of the Code of 1892.

In the later case of *Lopez* v. *Jackson,* 79 Miss. 461, 31 So. 206, the court held that a special judge appointed under section 165 of the Constitution was empowered to approve the stenographer's notes of evidence and to sign the bill of exceptions in a cause tried by such special judge, although section 920 of the Code of 1892, and the Laws of 1896, p. 91, seemed to be inconsistent therewith. In the course of the opinion, the court said:

"There seems to be some inconsistency between section 165 of the Constitution and sections 920 and 921 of the Code of 1892, which, being brought forward from the Code of 1880, were not revised so as to harmonize with said section 165 of the Constitution; but the spirit of the Constitution is to be carried out, though it may seemingly conflict with the statute upon the subject. We think the Constitution makes the person appointed and commissioned by the Governor to preside at the trial of any particular case in the circuit court for the time being and for that case the judge of the court, the trial judge, the judge; that, while the minutes of the court perhaps are to be signed by the regular judge, all orders in the case pertaining to its merits or conduct, and all bills of exception should be made by such special judge, . . . and by him alone."

In *Hall Commission Co.* v. *Crook,* 87 Miss. 445, 40 So. 20, the court held that where a regular judge of the supreme court was disqualified by reason of illness, a special judge appointed to try cases during such illness participated in the decision, and after the regular judge recuperated and a suggestion of error was filed, it was disposed of, and the special judge participated therein, a motion was made to set aside the order overruling the suggestion of error upon the ground that the special judge's authority expired upon the regular judge as-

suming his duties, and that the suggestion of error should be disposed of by the court composed of the regular judge thereof. In this opinion, Judge WHITFIELD said:

"The law seems clear that a special judge appointed to try a special case will take part in the decision of everything relating to that cause, suggestions of error, etc., included. Work on Courts and Their Jurisdiction, p. 395. That is not this case. Here, clearly, Judge HARPER's power to act as a special judge was limited to the period of the sickness of the Chief Justice. Immediately upon the termination of that disability—that is to say, when the Chief Justice resumed his duties—the power of the special judge at once terminated."

After discussing two authorities, the court continued as follows:

. "The cases referred to in Work on Courts and Their Jurisdiction, p. 395, notes 1 and 2, are cases of special judges appointed to try special causes. We are, therefore, of the opinion, both on these authorities and on reason and principle, that the power of the special judge in this cause existed only during the sickness of the Chief Justice, and ended upon the resumption of the bench by the Chief Justice—that is to say, upon the expiration of the disability (sickness) of the Chief Justice."

It will be seen from these authorities that a special judge appointed to try a special cause has and can exercise all the powers vested in the regular judge.

Of course, under section 718, Hemingway's Code of 1917 (section 754, Hemingway's Code of 1927), a judge may set a matter in which he is disqualified to be disposed of in vacation by the judge of an adjoining district, but if he should certify his disqualification to the Governor, and the Governor should appoint a special judge, under section 165 of the Constitution, such special judge may dispose of any matter before him whether in vacation or term time under the same conditions and terms as the regular judge could. The scheme is for the special judge to be the judge for all purposes in the particular cases he

tries under his appointment, or during the period in which he presides.

On the points covered by Judge McGOWEN in his dissent, I concur with the views expressed therein.

McGOWEN, J. (dissenting).

I do not agree with the conclusion announced in the main opinion, as to the effect of the subordination agreement entered into by the Missouri State Life Insurance Company and W. P. Holland subordinating several of the series of notes to the payment of a like number of the series, in point of time due prior to the subordinated notes.

The Gidden-Townsend and McNally notes sued upon herein contained this statement on the face of each note: "Secured by deed of trust of even date herewith." This statement was on the face of the notes when executed, and when indorsed by Brewer subsequent to execution and delivery, and was a material part of the notes before they were altered, as much so as any other part of it. In *Bay* v. *Shrader,* 50 Miss. 326, the court said, touching this point: "If such memoranda" or indorsement was made "on the back of the" notes "when executed, they constitute a part of the contract." *Key* v. *Cross,* 23 Miss. 598; *Effinger* v. *Richards,* 35 Miss. 540. The entry on the back of the notes sued on immediately reduced the face value of the notes in any market in the world. It was a patent alteration, and the Canal Bank & Trust Company is seeking to recover on the notes. It took them with the patent alteration, and is now seeking to recover for the benefit of Holland, to be credited on his indebtedness to it, and therefore it took the notes in their altered shape with knowledge of the alteration.

The alteration was material, controlling, and before they were altered the fact that they were secured by a trust deed must have been an inducement to secure another to indorse them; especially is this true when the

record shows that they were indorsed at a time when the surety was under no obligation of any kind to indorse the notes. Before. they were altered, the notes plainly provided that they would receive a share *pro rata* with all the other notes of the proceeds of a sale under the trust deed, *pro rata* and equal to the share of any other notes. After the agreement was entered thereon,. this right was destroyed, the legal effect of the note was materially changed, and the rights of all the parties to the contract obviously changed.

It makes no difference whether this subordination agreement was written on the face of the notes or on the back. 1 R. C. L. 799; Id. 977, section 15; *Burgess* v. *Blake,* 86 Am. St. Rep. 115, section 2; *Kurth* v. *Farmers' & M. Bank,* 77 Kan. 475, 94 P. 798, 15 L. R. A. (N. S.) 612, 127 Am. St. Rep. 428; 1 R. C. L. 967, section 4; *Sanders* v. *Bagwell,* 32 S. C. 238, 10 S. E. 946, 7 L. R. A. 743; *Bank of Lauderdale* v. *Cole,* 111 Miss. 39, 71 So. 260.

Those notes sued on here are separate debts upon which the liability of the defendant is to be determined by the instrument itself, and not by what the defendant's liability may or may not be upon some other paper. The question presented here is the right of recovery as against the indorser on the paper as presented as altered. Neither the Canal Bank nor Holland could contend as against the Missouri State Life Insurance Company in opposition to their solemn agreement. They were bound by it, but it did not bind the maker or the surety, and the cases cited in the main opinion do not in the remotest degree affect the question of the release of the surety, and the effect of an alteration of this kind upon the surety under existing statutes.

Section 119 of Uniform Laws Annotated, volume 5 of the Negotiable Instruments Act (Hemingway's Code, section 2697), reads as follows:

"*Instrument; How Discharged.*—A negotiable instrument is discharged:

"1.   .   .   .
"2.   .   .   .
"3.   .   .   .

"4.   By any other act which will discharge a simple contract for the payment of money."

Section 125 of the Negotiable Instruments Act, Uniform Laws Ann. vol. 5 (Hemingway's Code, section 2703), defining what constitutes a material alteration, is, in part, as follows:

"Any alteration which changes:

"1.   .   .   .
"2.   .   .   .
"3.   .   .   .
"4.   .   .   .
"5.   .   .   .   Or which adds a place of payment where no place of payment is specified, *or any other change or addition which alters the effect of the instrument in any respect,* is a material alteration." (Italics ours.)

Section 124 of the same act (sec. 2702, Hemingway's Code), is as follows:

"*Alteration of Instrument; Effect of.*—Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers.

"But when an instrument has been materially altered and it is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

These notes are being sued upon as collateral for the Holland note. Holland, as the holder, made the alteration himself, without Brewer's consent or the maker's consent.

On the subject of material alterations, in the case of *Born* v. *La Fayette Auto Co.* (Ind. Sup.), 139 N. E. 364, this statement of that court is illuminating as to the effect of the adoption of the Negotiable Instruments Act by the several states, wherein that court said:

"Since the adoption of this Negotiable Instruments Law under the tentative arrangement to have it uniform throughout all of the states it has been the policy of the courts to construe the law liberally in the interest of uniformity. Many opinions of different courts have stated that the law in relation to the material alteration of an instrument rests upon public policy, in that, to maintain the integrity surrounding commercial relations, no party to be benefited should be permitted under any guise to alter the written obligation of another without his authority or assent. To do otherwise would open a door to the perpetration of all kinds of fraud, inasmuch as written instruments, and especially commercial paper, are passed from hand to hand, through the hands of citizens, banks, and clearing houses, many hundreds and even thousands of miles distant from the party or parties to be bound, who have no control whatever over the possession of such instruments, and on account of which cannot prevent any person in the possession thereof from doing therewith as his inclination might dictate, in utter disregard of honesty and good conscience."

When this note came into the hands of the Canal Bank & Trust Company this alteration was as manifest and as open to view and shown out on the paper as clearly as chalk marks upon a blackboard. In Mississippi, we are controlled by the Negotiable Instruments Act; and whatever might have been the law before this act, under the decisions of our courts it is now the statute in Mississippi that a material alteration discharges the instrument.

HOLDEN and ETHRIDGE, JJ., concur in this opinion.

ON MOTION TO CORRECT DECREE.

ANDERSON, J., delivered the opinion of the court.

This cause was before the court on appeal from an interlocutory decree to settle its governing principles. *Canal Bank & Trust Co.* v. *Brewer et al.,* 113 So. 525. The

decree of the court below was affirmed as to appellees Cutrer and Smith. The interlocutory decree appealed from dissolved a temporary injunction restraining appellees Cutrer and Smith from disposing of certain notes. Appellees contend that the decree of this court affirming the decree of the court below as to appellees Cutrer and Smith is erroneous, in that they were not allowed five per cent damages against appellant on the value of the notes, the disposition of which by appellees Cutrer and Smith was enjoined; the claim of appellees being that such allowance should have been made under section 4926, Code of 1906 (Hemingway's Code 1927, section 3407). The question for decision is presented on motion by appellees, which will be treated as a suggestion of error, to correct the decree in that respect.

The question involved turns upon the proper construction of section 4926, Code of 1906 (Hemingway's Code 1927, section 3407), taken in connection with section 17, chapter 151, Laws of 1924 (Hemingway's Code 1927, section 9), which statutes follow in the order stated:

"3407 (3202). *Judgment in Certain States of Case.* —In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect the supreme court shall render judgment against the appellant for damages, at the rate of five per centum and costs, as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum. If the judgment or decree be for the possession of real or personal property, the damages shall be assessed on the value of the property.; if the judgment or decree be for the dissolution of an injunction or other restraining process at law or in chancery, the damages shall be computed on the amount due the appellee which was enjoined or restrained; if the judgment or decree be for the dissolution of an injunction or other restraining process as to certain property, real or personal, or a certain interest in property, or be a judgment or decree for the sale of property, or some interest in it, to satisfy a sum

out of the proceeds of sale, or to enforce or establish a lien or charge or claim upon or some interest in property, and the only matter complained of on the appeal is the decree as to some particular property or claim on it, the damages shall be computed on the value of the property or the interest in it, if the value of the property or interest in it be less than the judgment or decree against it; but if the value of the property or interest in it be greater than the amount of the judgment or decree against it, the damages shall be upon the amount of the judgment or decree.''

''9.  *Appeals from Interlocutory Order or Decree, How and When Allowed.*—An appeal may in sound discretion be granted by the chancellor in term time, or in vacation, from any interlocutory order, or decree whereby money is required to be paid, or the possession of property changed, or when having sustained or overruled a demurrer or motion he may think an appeal proper in order to settle all the controlling principles involved in the cause, or in exceptional cases to avoid expense and delay; but such appeal must be applied for and bond given within thirty days after the order or decree appealed from is filed in the proper office whether the decision be in term time or in vacation.  Such appeal if allowed must be allowed by the court or chancellor, and he shall determine whether the appeal shall operate as a *supersedeas* or not, but the appeal bond may be approved by the court or chancellor, or the clerk; but in case such an appeal is refused by the chancellor it may nevertheless be allowed by a judge of the supreme court as provided in section 4908, Mississippi Code 1906.''

Does the former statute apply to interlocutory as well as final decrees?  It allows five per cent damages in the cases to which it applies as a penalty against the unsuccessful appellant for a wrongful appeal.  This allowance is also in the nature of compensation to the successful appellee for the expenses incurred by him through the wrongful appeal by his adversary.  *Tigner* v. *McGehee,*

60 Miss. 242; *Boyd* v. *Applewhite,* 123 Miss. 185, 85 So. 87; *Davis* v. *Wilkins,* 127 Miss. 490, 90 So. 180. The statute, therefore, must be strictly construed against the claim of the successful party. It is true the language of the statute is broad enough to cover appeals from interlocutory decrees as well as final decrees.

In construing statutes, however, the chief aim of the courts should be to reach the real intention of the legislature. A construction which will bring about manifestly unthought-of and unjust results will be avoided, if possible, and, if necessary to avoid such results, the courts will widen or narrow the letter of the statute. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392. In the Kennington case our court quoted, with approval, what was said by Lord Coleridge in *Queen* v. *Clarence,* L. R. 22, Q. B. Division 65. In that case Lord Coleridge used the following language:

"In such a matter as the construction of a statute, if the apparent logical construction of its language leads to results which it is impossible to believe that those who framed or those who passed the statute contemplated, and from which one's own judgment recoils, there is in my opinion good reason for believing that the construction which leads to such results cannot be the true construction of the statute."

We think to apply this statute to interlocutory decrees in many cases would bring about unthought-of and unjust results, results never contemplated by the legislature in adopting the statute. Take, for illustration, the case in hand—an appeal from an interlocutory decree. There was an affirmance as to appellees Cutrer and Smith, but the whole cause was remanded for trial on its merits. On another trial an entirely different case on its facts may be presented for the decision of the court. The court may reinstate the injunction as to appellees Cutrer and Smith, and make it permanent, and under the law and the facts may be justified in so doing. And, if that

should be done, the result will be, if the statute is applied, that appellant will have been mulcted thousands of dollars of damages for wrongfully bringing this cause up to this court.

In order to appeal from an interlocutory decree under section 17, chapter 151, Laws of 1924 (Hemingway's Code 1927, section 9), it takes the joint action of the court and the appellant. If the appellant commits a wrong against the appellee in taking the appeal, the court granting the appeal is a party to the wrong. An appeal under that statute from an interlocutory decree to settle the principles of the case is an appeal for the benefit of all parties to the cause. It has for its purpose the correct guidance of the trial court in the further progress of the case. Although the appellant may be unsuccessful, the result of such an appeal may be as much for the benefit of the appellee as the appellant. We cannot believe that the legislature intended to punish an unsuccessful appellant in such case by mulcting him in the damages provided by section 4926, Code of 1906 (Hemingway's Code 1927, section 3407). We are of opinion, therefore, that the latter statute only applies to final decrees, such decrees as to which the law gives to the complaining party an *absolute* right of appeal; that the statute applies alone to cases where the unsuccessful appellant is the sole cause of the wrong done the successful appellee. That is not true of appeals from interlocutory decrees.

The question is one of first impression. All of the cases we know of where the five per cent damages have been allowed under this statute to the successful appellee were appealed from final decrees and not interlocutory decrees. If the damages have been allowed in any case involving an appeal from an interlocutory decree, it has occurred without objection and without the point being presented and decided by the court.

It follows from these views that appellees' motion should be overruled.

*Overruled.*