## UPTON v. ADCOCK.*

(Division B.   Dec. 3, 1928.)

[119 So. 190.   No. 27405.]

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, section 212, p. 780, n. 98; Release, 34Cyc, p. 1069, n. 87; On duty of court to pass on constitutionality of statute only when necessary to decision, see 6 R. C. L. 76; 2 R. C. L. Supp. 17, 4 R. C. L. Supp. 377; 5 R. C. L. Supp. 317; 6 R. C. L. Supp. 353.

*Sennett Conner,* for appellant.

460

*W. U. Corley,* for appellee.

ETHRIDGE, P. J.   M. M. Adcock filed suit against C. W. Upton in the circuit court of Covington county for the sum of one thousand dollars alleged to be due Adcock by reason of the surrender of a contract between Upton and Adcock whereby Upton was to pay Adcock to oversee and manage a plantation owned by Upton.   The original

contract to oversee the plantation was in writing, and provided as compensation for Adcock the sum of one cent per pound for each pound of lint cotton raised on the lands described during the year 1926. Adcock had entered into the performance of the said contract when Upton became desirous of disposing of his plantation and enlisted Adcock's services in making the sale for him. M. M. Adcock took up the matter of sale of Upton's plantation with his brother, W. T. Adcock, and consummated the deal with him for Upton; Upton taking certain property owned by W. T. Adcock in part payment therefor. After making the trade, Upton discovered that the place he had acquired from W. T. Adcock was not of the character represented to him by M. M. Adcock in negotiating the deal between him (Upton) and W. T. Adcock. Upton thereupon filed a bill in the chancery court against W. T. Adcock to cancel the trade on the ground of fraud. The cause was heard in the chancery court, and a decree was entered canceling the contract, and because of fraud the contract was canceled upon disputed testimony; there being conflict between Upton's and Adcock's testimony as to the facts. That decree, on appeal, was affirmed by this court and Upton restored to the possession of the premises, but the right of possession was deferred until the completion of the crop.

M. M. Adcock had also filed suit against C. W. Upton for his salary under a written contract, before the expiration of the year in which the crops were to be grown and harvested. In that suit he recovered two hundred dollars as compensation, but on appeal the judgment was reversed and the suit dismissed, because prematurely brought. Thereupon the present suit was filed. The general issue was pleaded by Upton, and notice given thereunder of special matter, wherein it was stated that the alleged contract sued on was terminated, by oral agreement between plaintiff and defendant, at the time defendant agreed to sell to W. T. Adcock said place (which sale

M. M. Adcock was anxious to have consummated); that at that time it was agreed between plaintiff and defendant that the defendant would be relieved from liability under said contract; that the plaintiff agreed to the termination of said contract as an inducement to the defendant, Upton, to sell the said lands to his brother, W. T. Adcock; that the plaintiff had an agreement with his brother to manage the farm for him on the same terms and conditions contained in the contract with Upton, and continued to superintend the said plantation and perform his duties during the year; that plaintiff had, or could have, secured employment in line with his training and business fully as remunerative as that provided for in the contract sued on; that the plaintiff never brought action, or thought of bringing it, until the defendant brought suit in the chancery court to set aside the sale of his said plantation to W. T. Adcock because of the fraud practiced upon the defendant by W. T. and M. M. Adcock in inducing him (the defendant) to agree to the said sale.

At the trial M. M. Adcock and his wife testified that Upton had employed Adcock, under a written contract, as stated, and after M. M. Adcock had entered Upton's employ that Upton decided to sell his plantation, and did sell it to W. T. Adcock, and that in order to make the sale Upton agreed to pay M. M. Adcock the sum of one thousand dollars in lieu of his rights under the written contract. Upton testified that he did not make such an agreement, but that it was agreed, in the making of the trade between W. T. Adcock and Upton, that M. M. Adcock would release Upton from him contract with him, and would take a contract, on the same terms and conditions as provided in the contract with Upton, with W. T. Adcock, his brother. Upton introduced a number of witnesses living in the community, who testified that M. M. Adcock remained on the place throughout the year and that he made statements to them in accordance with

the testimony of Upton, above stated. The case was submitted to the jury, and the jury returned a verdict, nine to twelve, in favor of M. M. Adcock for one thousand dollars.

On the trial of the cause the defendant requested, and was refused, two instructions which read as follows:

"The court instructs the jury that they will find for the defendant they believe from the evidence that the defendant was induced by the fraud of the plaintiff, M. M. Adcock, to sell the Kervin place to the plaintiff's brother and place himself in a position not to continue the employment of M. M. Adcock to manage said farm, and this is true even though they may further believe from the evidence that Upton agreed to pay the plaintiff the sum of one thousand dollars by oral agreement entered into by the defendant herein at a time when he was not aware of such fraud."

"The court instructs the jury for the defendant that if they believe from the evidence that fraud was practiced by the plaintiff, M. M. Adcock, upon the defendant, in order to induce the defendant, C. W. Upton, to convey his farm, known as the Kervin place, to W. T. Adcock, the brother of said M. M. Adcock, and that said sale and deed of conveyance were subsequently canceled and set aside, because of such fraud, and that the defendant, C. W. Upton, never regained possession of the Kervin place during the year 1926, then they will find for the defendant, even though they may further believe, from the evidence, that at the time said sale was negotiated by said M. M. Adcock, it was agreed by and between the plaintiff and defendant that the plaintiff was to receive the sum of one thousand dollars from the defendant for the cancellation of the original written contract of employment between plaintiff and defendant and for making said sale."

There was no instruction given the defendant, Upton, embodying the principles sought to be announced in these

instructions. We think the instructions should have been given and the issue of fraud submitted to the jury. If the statement testified to by Upton is true, in fact, Adcock would not have had the right to recover.

It further appears that the regular circuit judge was disqualified to try the cause and certified his disqualification to the Governor, who appointed Hon. C. G. Mason as special judge to hear and try the said cause, with certain others pending in the said court. When the record was made up containing a purported judgment of the circuit court, the appellant, in writing, requested the clerk to certify as to whether or not the special judge signed the minutes of the court or the order of the court entered on the minutes at any time or place, and the clerk certified that the special judge had not so signed the said minutes. Thereafter, a writ of *certiorari* was applied for to this court suggesting a diminution of the record, and alleging that the judgment was prepared and signed by the presiding judge but was left off of the minutes by the recording clerk; that the signature of the judge to the order was not written on the minutes by the clerk, and it was stated in the application for *certiorari* that the memorandum of the judgment, or the original copy of the judgment, signed by the special judge, C. G. Mason, was found in some place in the clerk's office, but it was not stated that the judge actually signed the minutes of the court. The said purported copy of the judgment was not filed in the court below, and, of course, is not a certified copy of the entry of the minutes. It is urged by the appellant that the minutes had to be signed by the special judge, and not by the regular judge, and that section 752, Hemingway's 1927 Code (section 996, Code of 1906), and section 753, Hemingway's 1927 Code (section 997, Code of 1906), are in conflict with section 165 of the Constitution of 1890, and that a judgment entered on the minutes is invalid and of no effect unless the minutes have been signed by the presiding judge, and

that the said sections of the Code above referred to undertake to dispense with the signing of the minutes by the special judge, and are, to that extent, unconstitutional.

We find it unnecessary to pass upon the constitutionality of this statute, although it would appear that section 165 of the Constitution disqualifies an interested or otherwise disqualified judge for all purposes. Compare *Hamblett* v. *Jones* (No. 27401), 118 So. 711; *Canal Bank & Trust Co.* v. *Brewer*, 147 Miss. 885, 113 So. 522, 114 So. 127. In a recent case challenging the jurisdiction of justices of the peace to sit where interested or related to parties, we decided that the rendition of judgment by a disqualified justice was not void, but merely voidable, and if, on appeal, a trial *de novo* was allowed, as it was in that case, that the parties secured the benefit of an impartial and disinterested judge. *Hitt* v. *State* (Miss.), 115, So. 879.

We think the same rule would be applicable here; that the judgment entered would not be void and subject to collateral attack, but the question could only be raised on appeal; and as on this appeal we find other reversible errors, it is unnecessary to pass upon the constitutionality of statutes will never be passed upon, unless to do so is necessary to the disposition of the case.

The judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*